UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                 :

| | |
|---|---|
| SHI MING CHEN, LIANHE ZHOU, YONG KANG LIU, JIXIANG WANG, WEI MIN ZHU, BAOJUN TIAN, XINLONG LIU, QIFANG CHEN, and PINGJIN FAN, *individually and on behalf of others similarly situated,* | Case No. 17-cv-00802-GBD-GWG |

                          Plaintiffs,

          v.

HUNAN MANOR ENTERPRISE, INC. , et al.,

                       Defendants.

-------------------------------------------------------------------X

## MEMORANDUM OF LAW BY TASTE OF MAO DEFENDANTS OPPOSING PLAINTIFFS' RULE 23 CLASS CERTIFICATION MOTION & IN SUPPORT FOR TASTE OF MAO DEFENDANTS' CROSS-MOTION

RESPECTFULLY SUBMITTED BY:

MICHAEL R. CURRAN
ATTORNEY FOR A TASTE OF MAO, INC.
& ZHENQI XIAO
98-120 QUEENS BOULEVARD, SUITE #1-C
REGO PARK, NEW YORK 11374-4414
(347) 549-2079 (CELL-PANDEMIC)
(718) 830-0246, EXT. 127 (OFF TEMP CLOSED)
mrc4law@yahoo.com

**TABLE OF CONTENTS**

<u>Page No(s.)</u>

| | |
|---|---|
| Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | i |
| Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | iii |
| Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Factual and Procedural Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| A General Objection to Plaintiffs' Evidence . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Plaintiffs' Affidavits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Missing Proposed Class Representatives . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| Use of Untranslated Material in Chinese . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |

| | | |
|---|---|---|
| I. | The Evidence of Plaintiffs' FLSA Claims Is Seriously Deficient . . . . . . | 14 |
| | A. | The Affidavits Are Insufficient to Sustain a Rule 23 Application | 14 |
| | B. | Untranslated Documents in Chinese Cannot Withstand Scrutiny as Support for a Rule 23 Motion . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| II. | Plaintiffs' Class Claims Are Not Sustainable Upon Review . . . . . . . . . . | 16 |
| | A. | Plaintiffs Do Not Successfully Articulate the Basis for a Rule 23 Class | 17 |
| | 1. | Supreme Court Analysis of Rule 23 Certifications . . . . . . . . . . . . . . | 18 |
| | 2. | Plaintiffs' Attempt to Apply FRCP 23 to Their State Law Claims . . . | 19 |
| | 3. | Evaluating the Proposed Class and Class Representatives . . . . . . . . . | 20 |
| | | (a) Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| | | (b) FRCP 23(a)(1): Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | | (c) FRCP 23(a)(2): Commonality . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | | (d) FRCP 23(a)(3): Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | | (e) FRCP 23(a)(4): Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | | (f) FRCP 23(b)(3): Predominance & Superiority . . . . . . . . . . . . | 28 |

    B.     Counsel Has Been Unable to Manage Alleged Class Claims and
            to Control the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

III.    The FLSA Claims in This Matter Should Be Dismissed Which Will Cause
       Supplemental Jurisdiction to Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     . . . . . . . . . .    32

TABLE OF AUTHORITIES

**Supreme Court Cases**                                                    **Page No(s).**

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997)    24, 25

Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds, 568 U.S. 455,
133 S.Ct. 1184 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426 (2013) . . . . . . . . .    18, 28

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541 (2011) . . . . .    18, 20, 22

**Federal Cases**

Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)    21

In re: Aqua Dots Prods. Liability Litig., 654 F.3d 748 (7th Cir. 2011) . . . .    25, 29

Ault v. Walt Disney World Co., 692 F.3d 1212 (11th Cir. 2012) . . . . . . . .    23

Butler v. Sears, Roebuck & Co., 727 F.3d 796 (7th Cir. 2013) . . . . . . . . . .    28

Carrera v. Bayer Corp., 727 F.3d 300 (3rd Cir. 2013) . . . . . . . . . . . . . . . .    20

Chen v. Hunan Manor Enterprise, Inc., 17-cv-00802 -GBD-GWG . . . . . . . .    3

Cruz v. Aramark Service, Inc., 213 F. App'x. 329 (5th Cir. 2007) . . . . . . . .    15

Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170 (3rd Cir. 2012) . .    24, 25

Gomez v. St. Vincent Health, Inc., 649 F.3d 583 (7th Cir. 2011) . . . . . . . .    25

Griffin v. GK Intelligent Sys., Inc., 196 F.R.D. 298 (S.D. Tex. 2000) . . . .    25

Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349 (3rd Cir. 2013) . . . . . . . . . .    20

Heredia v. Americare, Inc., 17-cv-06219-RWL (S.D.N.Y. July 13, 2020) . .    16

Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 659 (N.D. Cal. 1994)    15, 16

Jiajie Zhu v. Jing Li, 19-cv-02534 (N.D. Ca. 2019) . . . . . . . . . . . . . . . . . .    16

Leyva v. Medline Indus., Inc., 716 F.3d 510 (9th Cir. 2013) . . . . . . . . . . .    29

Lusk v. Serve U Brands, Inc., 17-cv-06451 (W.D.N.Y. 2018) . . . . . . . . . . .    31

Marcus v. BMW of N. Am., LLC, 687 F.3d 583 (3rd Cir. 2012) . . . . . . . . .    20, 21, 23, 28

M.D. v. Perry, 675 F.3d 832 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . .    22

**Federal Cases cont'd**                                                    **Page No(s).**

<u>Myers v. Hertz Corp.</u>, 624 F.3d 537 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . .   20

<u>Ouedraogo v. Durso Assocs., Inc.</u>, 03-cv-1851 (S.D.N.Y. 2005) . . . . . . . . .   31

<u>Palmer v. Trump Model Management, LLC</u>, 175 F.Supp.3d 103
    (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

<u>Phillips v. Asset Acceptance, LLC</u>, 763 F.3d 1076 (7th Cir. 2013) . . . . . . .   25

<u>Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.</u>,
    654 F.3d 618 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

<u>Sicom S.P.A. v. TRS, Inc.</u>, 168 F.Supp.3d 698 (S.D.N.Y. 2016) . . . . . . . . .   16

<u>Stearns v. Ticketmaster Corp.</u>, 655 F.3d 1013 (9th Cir. 2011) . . . . . . . . . . .   23

<u>Tangtiwatanapaibul v. Tom & Toon, Inc.</u>, 17-cv-816, 2018 WL 4405606
    (S.D.N.Y. Sept. 17, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

<u>United States v. Jose Angel De Santiago Ballesteros</u>, 14-cr-4702
    (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

<u>U.S. Equal Emp't Opportunity Comm'n v. De Jalisco</u>, 11-cv-03444
    (S.D Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

<u>You ex rel. Himself v. Grand China Buffet & Grill, Inc.</u>, 17-cv-42
    (N.D.W. Va. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

**Federal Statutes**

29 U.S.C. § 201 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

29 U.S.C. § 213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

FLSA § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 4, 8, 11, 30

Fed R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 18-20

FRCP 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

FRCP 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21-22

FRCP 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22-23

FRCP 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23-24

FRCP 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24-27

FRCP 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19, 27, 28-29

**Federal Statutes cont'd**            **Page No(s.)**

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 5, 6, 11, 12, 14, 16, 17, 18, 31, 32

Rule 23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Rule 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Fed. R. Evid. 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Fed. R. Evid. 604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15, 16

Fed. R. Evid. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15, 16

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 13

FLSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *seriatim*

**Federal Regulations**

29 CFR § 541.100 (eff. 09/27/2019) . . . . . . . . . . . . . . . . . . . . . . . . . .  27

**State Statutes**

New York Labor Law ("NYLL") §§ 650 *et seq.* . . . . . . . . . . . . . . . . . . .  1

**Miscellaneous Sources**

New York Dept. of State Corporate Website
https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY    3

PRELIMINARY STATEMENT

Plaintiffs SHI MING CHEN, LIANHE ZHOU, YONG KANG LIU, JIXIANG WANG, WEI MIN ZHU, BAOJUN TIAN, XINLONG LIU, QIFANG CHEN AND PINGJIN FAN ("plaintiffs"),[1] who claim to sue on their own behalf and on the behalf of allegedly similarly situated individuals, have brought suit, in accordance with plaintiffs' 02/05/2020 Amended Complaint, against the following defendants: HUNAN MANOR ENTERPRISE, INC. d/b/a Hunan Manor, HUNAN MANOR LLC d/b/a Hunan Manor, HUNAN HOUSE MANOR INC. d/b/a Hunan Manor, HUNAN HOUSE RESTAURANT, INC. d/b/a Hunan Manor, HUNAN HOUSE RESTAURANT NY LLC d/b/a Hunan Manor, HUNAN HOUSE, INC. d/b/a Hunan Manor, A TASTE OF MAO, INC. d/b/a China Xiang, JINGCHAO LI a/k/a Jing Chao Li a/k/a Diana Li, ZHIDA LI a/k/a Zhi Da Li a/k/a Zhi Ba Li and ZHENQI XIAO a/k/a Nancy Xiao a/k/a Nancy Zhou ("captioned defendants").

The plaintiffs have sued captioned defendants under the federal Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA") and, under supplemental jurisdiction, New York Labor Law ("NYLL") wage & hours provisions, alleging violations thereof, pursuant to NYLL §§ 650 *et seq.* Currently pending before the Court, plaintiffs have brought a motion for Fed R. Civ. P. ("FRCP") 23 class certification, alleging class claims under state law, that nine enumerated plaintiffs in this matter are proper class representatives for some unknown 40 to 60 (depending upon the citation in the record) persons and that Troy Law, PLLC is proper legal representative for the putative class.

Because defendants A Taste of Mao, Inc. d/b/a China Xiang and Zhenqi Xiao ("Taste of Mao defendants") argue: (1) not only are enumerated plaintiffs improper as class representatives;

---

[1]Six plaintiffs as set forth in the Amended Complaint were dismissed from this case by 06/30/2020 Report and Recommendation of Hon. Gabriel W. Gorenstein, USMJ, **ECF Doc. 204**, adopted by 08/24/2020 Memorandum Decision and Order of Hon. George B. Daniels, USDJ, **ECF Doc. 211**: Jian Cai, Guoqiang Xu, Shiqiang Gao, Min Jiang, Minga Ke and Guo Yong Zhu.

(2) there is no ascertainable Rule 23 class; (3) plaintiffs fail to articulate competent evidence of an FLSA violation depriving the Court of subject matter pendent jurisdiction over state law claims; and (4) plaintiffs' counsel, in the instance of this case only, is not appropriate class counsel, Taste of Mao defendants cross-move to dismiss/deny plaintiffs' Motion for Rule 23 class certification of state claims and dismiss four plaintiffs from this matter.  Due to deficits in evidence, Taste of Mao defendants argue the Court does not have proper supplemental jurisdiction over state claims and respectfully request that this Court consider dismissing the entire action due to its deficits.[2]

## FACTUAL AND PROCEDURAL OVERVIEW

An extended Chinese family ventured over the years into the restaurant business.  The primary similarities among their restaurants were that they were owned by cousins and featured Hunan cuisine.  There were no series of franchises or a common corporate ownership linking them together—all the restaurants were individual enterprises, operating separately.[3]  Sometimes the cousins were hired by family members to assist in managing other cousins' restaurants.  Defendant Zhenqi Xiao, for example, managed two of the restaurants before she formed A Taste of Mao, Inc.

Eventually, however, the kitchen workers at these establishments were apparently recruited to bring a lawsuit against the restaurants to allege FLSA violations, as well as state wage and hours violations.  Other workers, such as serving persons and delivery personnel, were recruited.  A legal theory was developed by the lawyer representing the workers wherein he alleged the restaurants were all linked as a common corporate organization, identifying the restaurants collectively as the

---

[2] Although the cross-motion is brought for the benefit of Taste of Mao defendants, respectfully, jurisdictional arguments permeate the entire case, arguing for global application to all defendants.

[3] Reading some of the material in the case, it seems the Court bought into the idea that there was a "chain," but it is unclear, other than the name, Hunan, how the Court obtained that impression. This misunderstanding may have arisen from the Chinese nickname given to the restaurants, not English names, as the English d/b/a names were Hunan Manor, Hunan House and China Xiang.

"Hunan House," which the lawyer claimed incorrectly was the d/b/a for all restaurants.  The label is extremely general and "Hunan" is a common modifier: A simple search of the New York State Department of State website, searching the term "Hunan," will yield at least 255 hits of various incarnations of companies that include the word "Hunan" as part of the company name.  See https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY ("Hunan").

The lawsuit herein was filed by the above lawyer, well-known in the Chinese community for bringing these kinds of suits against Chinese restaurants, entitled Chen v. Hunan Manor Enterprise, Inc., 18-cv-00802-GBD-GWG in the United States District Court for the Southern District of New York on behalf of six plaintiffs: Shi Ming Chen, Lianhe Zhou, Yong Kar Liu, Jixiang Wang, Wei Min Zhu and Jian Cai, **ECF Doc. 1**.  Attempts at mediation, a useful tool for settling many of these types of cases, failed.  **ECF Doc. 53**, e.g.  Plaintiffs' counsel obtained Court certification of a collective class of "cooks, delivery persons, and food packers" pursuant to FLSA § 216(b) on 02/15/2018, **ECF Doc. 72**, the Court directed defendants to produce a contact list of prospective or potential opt-in plaintiffs for use in the suit, id., and the Court dismissed some of the defendants from the case (i.e., a New Jersey restaurant and two individuals).

The case was litigated over 3.75 years.  There were difficulties obtaining depositions of the plaintiffs, who drifted in and out of the case in the manner of a kaleidoscope, until, finally in the first half of 2019, a number of plaintiffs were deposed, counsel for plaintiffs alleging that there were 15 plaintiffs participating in the case, but in reality plaintiffs' counsel had little control over his clients.  Defendants' attorney Eric Li did a good job deposing the plaintiffs, which will be discussed below, as it was clear the plaintiffs had all rehearsed their statements via their attorney.

Plaintiffs' counsel filed an Amended Complaint, also terminating some defendants**. ECF Doc. 182**.  Plaintiffs would not appear for depositions, had gone back to China or simply would

3

not cooperate and, ultimately, six plaintiffs were dismissed from the case by the Court. **ECF Docs. 204, 211.** The case was scheduled to proceed to trial, but plaintiffs moved for leave to certify a Rule 23 class. **ECF Docs. 212, 213.** Taste of Mao defendants cross-move to resolve this case by moving to deny Rule 23 certification, moving to dismiss four plaintiffs from the case and moving to bring to Court attention what appears to have been misuse of FLSA federal jurisdiction in order to shoehorn state supplemental claims into federal court as a means of forum shopping.

## A GENERAL OBJECTION TO PLAINTIFFS' EVIDENCE

## PLAINTIFFS' AFFIDAVITS

Taste of Mao defendants respectfully object to the alleged evidence that plaintiffs proffer on their Rule 23 Motion, alleging that not only does the record not support plaintiffs' Rule 23 Motion, but it argues for denial and even dismissal of claims. In bringing the Motion, plaintiffs' counsel relies upon seven (7) affidavits, although he alleges that there are nine (9) class representatives. Taste of Mao defendants move to dismiss these two missing plaintiffs from the case as this was the moment to state their class claims and they are absent: *Yong Kang Lieu* and *Qifang Chen*. The attorney for plaintiffs offers no reason or excuse for the present absence of these two individuals. Given earlier unexplained absences of plaintiffs, defendants are entitled to dismissal of the claims. Plaintiffs rely upon seven (7) affidavits on the Rule 23 Motion. None of the affidavits are in proper form, as the alleged translators, Ellen Chen and Tiffany Troy, present no qualification as certified or professional translators. In addition, there is no Chinese text affixed to the affidavits from which the translators were able to translate. It is clear from the record that every affiant has either limited or nonexistent English skills and knowledge, so the deponents are swearing to text they do not understand. This same thing occurred in 2017 on the Motion to certify the collective FLSA § 216(b) class, except those earlier affidavits were only notarized without even the pretense

4

of a translator's affidavit or certification.   See, e.g., **Exhibit "1,"** Affidavit of Shi Ming Chen,

dated 06/01/2017, **ECF Docs. 36-17, 238-1 (Page 13 of 20-Page 20 of 20).**   In his 2020 affidavit,

Mr. Chen states that most of the workers "can neither read nor speak fluent English."   Id. at **Exhibit**

**"1," ECF Doc. 218-1, ¶ 43 (Page 8 of 20).**   Helpfully, at his 04/16/2019 EBT, Mr. Chen was

forthright about his own limitations in the English language and that he didn't understand English.

See **Exhibit "18," ECF Doc. 218-18**, 04/16/2019 Tr. 28:17-31:25.  Later, at the same deposition,

the prior attorney for Taste of Mao defendants asked Mr. Chen about the 06/01/2017 Affidavit:

> **Q:**   **I'm going to show you again Exhibit A, which was previously provided to you. I wanted to be clear on the record that this is called an affidavit of Shi Ming Chen in support of plaintiff's motion for conditional certification.  I would like to point your attention to the last page which is dated June 1, 2017.  Do you see that?**
> **A:**   **From 2017, where?  Here?**
> **Q:**   **On the top.  If you look at the top left, it says dated June 1, 2017.  Do you see where it says that?**
> **A:**   **Yes.**
> **Q:**   **To the right of that is a signature.  You've already testified that that's your signature, right?**
> **A:**   **Correct.**
> **Q:**   **Just to clarify, you've also stated that you didn't review the document before you signed it, right?**
> **A:**   **Correct.**

Id., 04/16/2019 Tr. 42:22-43:19; see also 04/16/2019 Tr. 46:2-48:6.   As a result of this testimony

it is clear that Mr. Chen, alleged linchpin of this class action, did not speak or understand English

and did not read or understand affidavits which he signed in support for certification of plaintiffs'

collective action and, presumably, the current Rule 23 Motion.  The translator's certifications

under these circumstances are clearly inadequate and deficient.

Taking the seven affidavits on this Motion in turn, following is the analysis of each:

**09/03/2020 Affidavit of Shi Ming Chen, Exhibit "1," ECF Doc. 238-1.**   Chen alleges he was a

fry wok, an ordinary cook, which Taste of Mao defendants dispute, who allege Chen was "head

chef" or "big man," managing the kitchen, discussed below.  Chen alleges he worked from January

2011 at Hunan House Restaurant, Inc. (although at his deposition he testified under oath he had no idea of the names of the various companies for which he worked), with several interruptions and job changes to other restaurants, through to December 2016 at A Taste of Mao, Inc. d/b/a China Xiang (again, he testified at his EBT he had no idea about company names). Chen alleges, when he left what is identified as A Taste of Mao, Inc., he was earning $4,000 per month, which works out to $48,000 per year. Surely, if Chen were nonexempt and working overtime, working 60 hours per week, Chen earned $48,000/(60 x 52 weeks) = $15.3846/hour. With the prevailing minimum wage for 2016 at $7.25 per hour or $10.875/hr. for overtime, Chen earned far in excess of a federal minimum wage, so there was no FLSA violation in the final year of employment, assuming Chen was nonexempt. However, Chen was not nonexempt, as shown below, and Chen presents individual questions that do not meet the Rule 23 standard, as discussed below. There was also no willfulness demonstrated in the manner in which he was paid.

Chen makes general hearsay statements alleging there were more than 50 other individuals who shared his claims, which are too generally alleged to withstand scrutiny.

**09/06/2020 Affidavit of Lianhe Zhou, Exhibit "5," ECF Doc. 238-5.** Zhou, a New Jersey resident, is alleged to be a fry wok, an ordinary cook, which Taste of Mao defendants agree he was. Zhou only worked for two brief periods: May 2014 to August 2014 at Hunan House, Inc. on West 56th Street and then March 2016 to May 2016 at Hunan House Restaurant, Inc. in Flushing. Taste of Mao defendant Ms. Xiao encountered this plaintiff in 2014 as a manager. Zhou's affidavit was allegedly translated to him by Tiffany Troy, who may be a relative of plaintiffs' counsel, so there is question of bias. In any event, the alleged translator does not provide qualifications or a Chinese text from which she allegedly translated. Zhou alleges he was earning $3,500 per month, annualized as $42,000 per annum, for 63 hours/week or $13.1258 hourly reduced to straight time,

so there was no FLSA violation as to minimum wage or overtime. Zhou makes contrived statements, based on hearsay, that there were 50 alleged individuals in his class.

**09/03/2020 Affidavit of Jixiang Wang, Exhibit "6," ECF Doc. 236-6.** Wang is alleged as another fry wok, ordinary cook. He claims employment from August 2013 to May 2014 at Hunan Manor LLC, 339 Lexington Avenue, Manhattan, then from May 2014 to January 2015 at Hunan House Restaurant NY LLC in Flushing, then from January 2015 to March 2015 at Hunan House, Inc. on West 56th Street, Manhattan, then at Hunan Manor LLC in New Jersey for three days in March 2015 (this restaurant was dismissed by the District Judge) and, finally, from September 2016 to October 2016 at A Taste of Mao, Inc. on 42nd Street, Manhattan. This plaintiff is the basis for the claim plaintiffs' counsel makes that there was a "Hunan chain." Wang's affidavit is defectively translated by Ellen Chen, with no credentials displayed, who used no text to translate.

Wang's paucity of English language skills was on display at his 05/09/2019 EBT, at which attorney Li was able to elicit a clear picture of Wang's memory deficit. See **Exhibit "16," ECF Doc. 238-16,** 05/09/2019 Tr. 9:8-18:20. As with the foregoing plaintiffs, in his Affidavit, Wang uses hearsay to allege there were 50 other persons with class claims. Wang, who cannot remember his own employment history, allegedly recalls other employees making $2,000/month to $3,600/month or $24,000 to $43,200 per year—in a wide range of situations. He alleges when he left Taste of Mao, he earned $3,400/month or $40,800/year or at 68 hrs./wk. a straight hourly rate of $11.5385/hr. There was no probable FLSA violation, at least by Taste of Mao defendants.

**09/05/2020 Affidavit of Wei Min Zhu, Exhibit "7," ECF Doc. 238-7.** Wei Min Zhu alleges that he "specializ[ed] in appetizers and cold food." Id. at **238-7 at Page 3 of 7**. He alleges he worked March 2015 to January 2016 at Hunan House, Inc. on West 56th Street. There is the same deficient Ellen Chen translation as above. Zhu claims he earned $2,500 per month or $30,000 per

year, when he left his job, working out at a straight time rate for 60 hrs./wk. as alleged of $9.6154 per hour.  While no minimum wage violation appears, there could be an FLSA overtime violation. This issue is not explored at length in the affidavit, however.  Again, it is alleged that more than 50 persons are potential class members with vague wage allegations about a couple of persons.

What is most interesting about this proposed class representative, however, is that he was addressed by District Judge Daniels in his 02/15/2018 Memorandum Decision and Order setting up the collective FLSA § 216(b) class. Judge Daniels specifically *excludes* Zhu from the collective class as a "kitchen staff" class category, which the Judge finds that Zhu has not "sufficiently alleged."  **ECF Doc. 72 at Page 11of 19 n.2.**  Zhu had, in fact, alleged he was "kitchen staff" specializing in appetizers and cold food.  **ECF Doc. 36-11 at Page 3 of 6**.  Once more, Zhu is alleged on the current motion as "kitchen staff," excluded by Judge Daniels**. ECF Doc. 238-7.**
**09/05/2020 Affidavit of Baojun Tian, Exhibit "8," ECF Doc. 238-8**.  Tian alleges he was a "deliveryman."  He alleges he was hired by Taste of Mao defendant Xiao from May 2015 to June 2015 and July 2015 to September 2015 to work at Hunan Manor LLC at 339 Lexington Avenue and was hired by Hunan House, Inc. at West 56th Street from June 2015 to July 2015.  Tian, as alleged by Taste of Mao defendant Xiao managing her cousin's restaurant at the time, was clearly a temporary worker hired to work two or three months.  See 11/10/2020 Affidavit of Zhenqi Xiao ("11/10/2020 Xiao Affid.") at ¶ 11(f)(i)-(v), **ECF Doc. 239**.  The work history of this plaintiff was very brief.  As for the alleged translation of his affidavit by Ellen Chen, it is plagued by the same deficits as above; (a) no recitation of qualifications or credentials as translator and (b) no Chinese text created by the affiant.  Although Tian's employment was very brief, he alleges in some detail the alleged work history of two other delivery persons and vaguely the existence of

"more than 50" class members.   One of these persons, Guoqiang Xu, was an opt-in plaintiff dismissed from the case 06/30/2020.

Tian's Affidavit also dispels any FLSA claim.   Tian alleges he worked 55 hours five days per week earning $400 base pay, but also $60 to $70 per workday in tips.   **ECF Doc. 238-8, ¶¶ 26-27**.   He alleges weakly that "a few dollars [were] deducted each day."   Thus, Tian earned $400 + $60-70/day x 5 days = $700 to $750 per week.   There is no credible FLSA violation.

Tian also provided an EBT on May 9, 2019.   See **Exhibit "17," ECF Doc. 238-17**.   Tian recognized that there were a Hunan House and Hunan Manor, different restaurants.   Id., **05/09/2019 Tr. 19:21-25**.   Tian admits he did not understand signing forms but signed whatever his attorney told him to sign whether he understood it or not.   Id, **05/09/2019 Tr. 22:3-29:23**.

**09/07/2020 Affidavit of Xinlong Liu, Exhibit "9," ECF Doc. 238-9.**   Mr. Liu is alleged in his Affidavit to have been a waiter.   Liu specifically states that he was hired by the "front manager," Kevin, corresponding to the structure explained by Ms. Xiao that each restaurant had a back manager or "big man" managing the kitchen, while there was a front manager who hired the personnel dealing with customers in the dining area, deliveries, financial transactions, etc.   Id. at **¶¶ 2-3.**   Liu alleges he was hired September 2015 and worked to April 2017, after this suit was filed, alleging he worked 28.5 to 38 hours per week, which would oust any overtime claim.   He seems to be making shaky state law claims, not claims under the Fair Labor Standards Act.   Liu appears to be claiming nonpayment for a ten-hour spread of hours worked yet does not actually provide facts supporting such a claim—a state law claim.   It also seems he may have been thrown into the mix to allege there were "more than 50 individuals" with class claims.   Liu alleges he earned $7.50 per hour in excess of the federal minimum wage from 2015 to 2017, but admits he made $100 per day in tips.   Id. at **¶ 18.**   This means Liu earned, as an example, ($7.50/hr. x 38)

hours + ($100/day x 5 days) = $785 in a typical week—far above the federal minimum for these hours ($285).  It is difficult to understand this plaintiff's claims.

Unlike other affiants working in the kitchen, who uniformly had limited English skills, Liu worked in the front dining room, where English language was required.  As a result, his claim that Ellen Chen "translated" his Affidavit and the elaborate explanation he gives seem specious.

As with Zhu above, on 02/15/2018 District Judge Daniels specifically addressed Liu and his claims and specifically *excluded* waiters and waitresses from collective class claims.  See **ECF Doc. 72 at 9 of 19 to 11 of 19**.  Judge Daniels took great care to articulate why he had excluded this class, but also finding no FLSA violation ("Furthermore, Plaintiff Liu's work schedule is consistent with, if not suggestive of, a *lawful* policy with regard to minimum wage and overtime, not an unlawful one.").  Id.  It is hard to imagine why plaintiffs' counsel included this individual in the Rule 23 Motion, other than trying to inflate the numbers of proposed class members.

Taste of Mao defendants never knew or encountered Liu and he should be dismissed from the case, at least as to Taste of Mao defendants.  There is only a single paragraph where Liu alleges that he was "paid" by defendant Xiao.  See 11/10/2020 Xiao Affid. at ¶ **11(g)(ii), ECF Doc. 239**.  **09/03/2020 Affidavit of Ping Jin Fan, Exhibit "10," ECF Doc. 238-10**.  Fan is alleged to have been a "sorter" and that he was hired by Ms. Xiao while she worked as general manager over the front and back managers at Hunan House, Inc. on West 56th Street, where Fan alleges he worked from March 2015 to February 2016.  Taste of Mao defendants hired Fan, who apparently had no job at the time, where he worked at China Xiang (Ms. Xiao's restaurant) on 42nd Street from November 2016 to November 2017.   (Fan does not explain where he was or what he was doing between February 2016 and November 2016, a period of nine months.)   Fan opted into this case later, filing his opt-in form on 06/21/2018.  **ECF Doc. 105**.  This filing may have been the result

of defendants providing plaintiffs with a list of affected employees, following the 02/15/2018 Order by Judge Daniels certifying an FLSA § 216(b) collective class.   **ECF Doc. 72**.   Because there is no job description provided, it is not clear if "sorter" was included in the class conditionally certified by Judge Daniels of "cooks, delivery persons, and food packers."   For example, Judge Daniels excluded certification of "kitchen staff."   See above discussion over Wei Min Zhu.

While Fan worked for A Taste of Mao, Inc. d/b/a China Xiang, he alleges he earned from $2,900 to $3,100 per month.   This works out to $34,800 to $37,200 per annum.   Fan alleges he worked 60 hours per week or 3,120 hours per year.   Thus, Fan earned $34,800/3,120 = $11.1539 to $37,200/3,120 = $11.9231 straight hourly rate employed by Taste of Mao defendants.   There is thus no conceivable FLSA violation as to Taste of Mao defendants, cross-movants.

Fan, unlike the other affiants, does not allege that he was aware of any other named potential class claimants, although he loosely alleges "more than 50 individuals" with claims.

The alleged translation by Ellen Chen is fatally plagued by her lack of stated qualifications as a translator and there is no text from which she translated.

## MISSING PROPOSED CLASS REPRESENTATIVES

As stated above, plaintiffs have failed to provide affidavits by Yong Kang Liu and Qifang Chen in support for the Rule 23 Motion.   Captioned defendants and Taste of Mao defendants naturally argue for denial of the Motion and, relatedly, dismissal from the case for the absence of these two defendants.   This is all the more necessary, as it appears plaintiffs' counsel has lost control of these plaintiffs, much in the way of the six plaintiffs who were dismissed from the case 06/30/2020 by U.S. Magistrate Gorenstein's Report and Recommendation, which was adopted and indorsed by District Judge Daniels on 08/24/2020.   Judge Daniels excluded Qifang Chen, when he excluded Xinlong Liu, as serving persons from the conditional FLSA § 216(b) class.

There are further facts giving support to the dismissal of these two individuals.  As stated above, there is virtually no evidence of an FLSA violation among those plaintiffs providing affidavits.  It may therefore be inferred that the same situation will apply to the missing affidavits.

Qifang Chen is or was a waitress.  As with Xinlong Liu above, Judge Daniels in his conditional collective certification, specifically excluded waiters and waitresses from the class he certified.  Thus, it might be considered an exercise in futility to await curing of Ms. Chen's absence from the Rule 23 Motion papers, which, at this point, were filed over two months ago.

As for Yong Kang Liu, his absence may be deliberate.   Unlike the six plaintiffs dismissed from this case on 06/30/2020-08/24/2020, Mr. Yong Kang Liu appeared for his EBT 04/16/2019.  Mr. Liu's appearance, however, was not exceedingly helpful to Rule 23 class claims and, in fact, his testimony emphasizes the translation deficit in the affidavits.  See **Exhibit "15," ECF Doc. 238-15**, 04/16/2019 Tr. 12:6-15:15; 46:4-11; 48:20-49:12. (Lieu denies material he signed and, generally, is evasive about facts.)   Either counsel lost control of this plaintiff or avoided using him.  What is clear, however, is that there are universal problems with the English affidavits.

### USE OF UNTRANSLATED MATERIAL IN CHINESE

Accompanying plaintiffs' motion papers are documents that have been filed with the Motion, Affidavits and Declaration.  For example, at **Exhibit "14," ECF Doc. 238-14**, is a sampling of what are alleged to be payroll documents for Shi Ming Chen.   The preponderance of these documents is rendered in untranslated Chinese. See, for example, first and second pages of **Exhibit "14."**   A paralegal, Jie Lin, working in the office of counsel's partner, translated part of the Chinese language on the first page of **Exhibit "14"** to contrast it with the second page.  As can be seen, the words in untranslated Chinese are vital to understanding the payroll documents.

There are Chen payroll records in English, including paystubs, that indicate there was a concerted, if crude or basic attempt to comply with New York state law.  While the amount paid for Chen greatly exceeds rates under the Fair Labor Standards Act, the paperwork submitted shows a tendency to attempt to comply with governmental rules and regulations.   As a result, it is clear there was no willfulness on the part of Taste of Mao defendants, but also by captioned defendants. Thus, the FLSA two-year statute of limitations for claims should apply, limiting to claims dating back two years from the date the case was filed 02/02/2017, dating back to 02/02/2015.

The problem, however, is the evidence shows that there is no basis for federal jurisdiction, but that there might be cognizable state claims.   In other words, the proper place for litigating this case is a state court in individual actions, as a federal class action treatment has little viability.

There are numerous other, untranslated Chinese language documents in the record, as well. Among documents in Chinese on plaintiffs' Motion are: **ECF Docs. 218-2** (Chen employee handbook 100% in Chinese); **218-3** (Chen paystubs 90% in Chinese); **218-6** (Chen NYS wage notices mostly in Chinese); **218-8** (Zhou employee handbook 100% in Chinese); **218-9** (Zhou paystubs 80% in Chinese); **218-10** (Zhou time records 30% in Chinese); **218-12** (Zhou NYS wage notices mostly in Chinese); **218-14** (Wang paystubs 90% in Chinese); **218-16** (Wang time records 30% in Chinese); **218-17** (Wang NYS wage notices mostly in Chinese); **218-20** (Tian paystub 80% in Chinese); **218-21** (Tian NYS Wage notice mostly in Chinese); and **218-25** (Liu NYS wage notices mostly in Chinese).   The evidence provided encompasses the claims of Chen, Zhou, Wang, Tian and Xinlong Liu.  There is no documentary evidence provided regarding the claims of Yong Kang Liu (no affidavit), Zhu, Qifang Chen (no affidavit) or Fan.   Evidence produced is in an inadmissible form but, if considered by the Court, shows captioned defendants and Taste of Mao defendants attempted to comply with wage and hours laws in good faith.

The failure to translate documents from Chinese to English makes this evidence dumped onto the ECF worthless on plaintiffs' Rule 23 Motion to certify a plaintiffs' class.

**ARGUMENT**

**I.   THE EVIDENCE OF PLAINTIFFS'
FLSA CLAIMS IS SERIOUSLY DEFICIENT**

**A.  The Affidavits Are Insufficient to
Sustain a Rule 23 Application**

Before Taste of Mao defendants address the sustainability of plaintiffs' Rule 23 claims, the technical aspect of the evidence presented in support should be assessed.  The seven (7) Affidavits in Support for the Motion are deficient as the translators—Ellen Chen and Tiffany Troy—do not provide their qualifications other than to claim they are fluent in English and Mandarin Chinese. No text is provided by the affiants serving as the basis for the translations.  The untranslated Chinese documentary evidence is not useful for the Court nor admissible as evidence, as the Court is an English-speaking United States forum using English as a medium of communication and documentation that, unless specifically prepared, will adjudicate the case entirely in English.

The use of interpreters in federal court litigation is governed by Federal Rules of Evidence ("Fed. R. Evid.") 604: "Interpreter.  An interpreter must be qualified and must give an oath or affirmation to make a true translation."  Fed. R. Evid. 604 (as amended, eff. Dec. 1, 2011).   The provision works with Fed. R. Evid. 603. "Oath or Affirmation to Testify Truthfully.  Before testifying, a witness must give an oath or affirmation to testify truthfully.  It must be in a form designed to impress that duty on the witness's conscience."  Fed. R. Evid. 603 (as amended, eff. Dec. 1, 2011); see also Fed. R. Evid. 901, authentication, also applicable.  There is no indication that the foregoing were followed in preparing plaintiffs' affidavits, possibly with exception of the 09/07/2020 Affidavit of Xinlong Liu, which is detailed, but still fails to cite the qualifications of

Ellen Chen, translator.  Apparently, on the 2017 Motion to certify a conditional collective class, there wasn't a hint of an affidavit translation.  See, e.g., **Exhibit "1,"** 06/01/2017 Affidavit of Shi Ming Chen, **ECF Doc. 238-1**, notarized, no translation.  This deficit was important for affiants such as Chen, who have little or no English comprehension.  Although more of an attempt occurred on the Rule 23 Motion, the translations remain deficient.

Cases are legion in dealing with the qualifications and use of translators.  See You ex rel. Himself v. Grand China Buffet & Grill, Inc., 17-cv-42 at 8-10 (N.D.W. Va. 2019) (FLSA case & state claims) ("'[W]itness testimony translated from a foreign language must be properly authenticated and any interpretation done must be shown to be an accurate translation done by a competent translator," quoting Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 659 (N.D. Cal. 1994) (citing Fed. R. Evid. 604 and 901) (citations omitted)) (affidavit not considered); U.S. Equal Emp't Opportunity Comm'n v. De Jalisco, 11-cv-03444 at 13 (S.D Tex. 2012) (EEOC case) ("To be admissible evidence, witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator.") (citing Fed. R. Evid. 604 and 901) (citing Cruz v. Aramark Service, Inc., 213 F. App'x. 329, 334 (5th Cir. 2007) "* * * Fifth Circuit upheld the striking of an affidavit because it was plaintiff's counsel who had translated the statement for plaintiff.  The court stated that 'more importantly, the court has no indication of his skill as a translator, other than his own self-supporting claims.'") (affidavit stricken); United States v. Jose Angel De Santiago Ballesteros, 14-cr-4702 at 4 (4th Cir. 2015) (significant drug case):

> An interpreter in federal court "must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604.  In addressing an interpreter's fitness, "the fundamental question is one of qualification, not of veracity or fidelity.  In the absence of special circumstances, the latter qualities are assumed." (citation omitted) * * * *

(affidavit sustained).

15

**B.      Untranslated Documents in Chinese Cannot
Withstand Scrutiny as Support for a Rule 23 Motion**

The translation of documents is a similar issue.  See Jiajie Zhu v. Jing Li, 19-cv-02534 at

7-8 (N.D. Ca. 2019) ("* * * * A translated document must be properly authenticated, and any

translation must be shown to be accurate and done by a competent translator." (citing Fed. R. Evid.

604, 901, Jack v. Trans World Airlines, Inc., supra ("declining to consider translated document

where statement accompanying translation was not sworn, did not describe the translator's

qualification or expertise regarding language translation, and did not identify the translator.")

(balance of passage omitted) (translation not properly authenticated); Heredia v. Americare, Inc.,

17-cv-06219-RWL at 7-11 (S.D.N.Y. July 13, 2020) ("When, as here, a party relies on an English

language declaration of a person whose native language is not English, that party must 'also submit

documents sufficient to establish that [the declarant] understood what he was signing,'" citing

Sicom S.P.A. v. TRS, Inc., 168 F.Supp.3d 698, 709 (S.D.N.Y. 2016); see also Tangtiwatanapaibul

v. Tom & Toon, Inc., 17-cv-816, 2018 WL 4405606 at *3 (S.D.N.Y. Sept. 17, 2018) (quoting

Sicom) (affidavits not considered, uncertified translated documents not considered).   Herein, there

aren't even translations offered for numerous documents in Chinese, while, as stated above, the

translator's qualifications remain shrouded in mystery on the affidavits.

While the untranslated documents and improperly translated affidavits should respectfully

not be admitted for their truth, facts attendant upon affidavits and documents pertaining to the Rule

23 certification of purely state law claims as a class require review of these materials.

**II.      PLAINTIFFS' RULE 23 CLASS CLAIMS
ARE NOT SUSTAINABLE UPON REVIEW**

While plaintiffs' improper evidence is not sufficient to support class claims, some review

of these materials is necessary to debunk state class claims and FLSA allegations in general.   It is

essential to examine what plaintiffs produce as evidence *versus* what ought to have been produced to sustain a Rule 23 class for state law claims—or even FLSA claims and jurisdiction—after close of discovery 1.50 years ago in early 2019, and after 3.75 years of litigation.  Plaintiffs submit the following alleged class representatives on the Rule 23 Motion:

1.   Shi Meng Chen:        alleged to be a "fry wok," ordinary cook (defendants claim he was a kitchen manager), at various locations, from late 2011 to 2016, when he was terminated.

2.   Lianhe Zhou:          alleged to be a "fry wok," ordinary cook.

3.   Yong Kang Liu:        no allegations, no affidavit provided.

4.   Jixiang Wang:         alleged to be a "fry wok," ordinary cook.

5.   Wei Min Zhu:          alleged to be "kitchen staff," appetizers and cold food.   Excluded from conditional certification of class by District Judge Daniels.

6.   Baojun Tian:          alleged to be "deliveryman."

7.   Xinlong Liu:          alleged to be waiter.   Excluded from conditional certification of class by District Judge Daniels.

8.   Qifang Chen:          no allegations, no affidavit provided.

9.   Pingjin Fan:          alleged to be "sorter," not among certified class.

Three cooks, one deliveryman and one sorter (possibly, but not probably) appear to be the only four or five certified class representatives.

### A.  Plaintiffs Do Not Successfully Articulate the Basis for a Rule 23 Class

In counsel's 09/09/2020 Memorandum of Law, **ECF Doc. 219**, plaintiffs' counsel cites the Affidavits for facts in support of his Motion by the seven affiants—individuals who present affidavits on the Motion.  Id.  at pp. 3-7 (brief page numbering).   There are no citations to the documents that counsel filed and annexed to his Declaration.  Furthermore, in reviewing the

plaintiffs' affidavits, the filed documents are not mentioned in the affidavits. Thus, what plaintiffs present are seven conclusory statements for nine proposed class plaintiffs, but do not link up evidence provided in support. The documents have been dumped onto the ECF website. At this stage of the action, the parties are far beyond the pleading phase and evidence should be provided to back up claims so close to trial. Plaintiffs present conclusory statements only, but not evidence.

### 1.  Supreme Court Analysis of Rule 23 Certification

"Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011). A plaintiff must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, commons questions of law or fact, etc." Id. (emphasis in original). In Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds, 568 U.S. 455, 133 S.Ct. 1184 (2013), the Supreme Court held that there are limits to a court's analysis of the merits at the class certification stage. "Rule 23(b) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Id. at 1191. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id. at 1194-95. Finally, in Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426 (2013), the Court reiterated that the prerequisites to class certification require evidentiary proof and chided the court of appeals for "refusing to entertain arguments" at the class certification stage merely because they overlap with the merits. Id. at 1432-33.

After these decisions, it is now settled that when ruling on class certification the court must resolve any factual or legal disputes that are material to its FRCP 23 analysis and find that the plaintiff has met its burden of proof based on evidence, not speculation.

18

### 2.   Plaintiffs' Attempt to Apply FRCP 23 to Their State Law Claims

FRCP 23 sets forth the initial standards a proposed class must meet for certification:

> Rule 23. Class Actions (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FRCP 23(a), as amended.  Plaintiffs seek certification of their claims under FRCP 23(b)(3):

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> * * *
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FRCP 23(b)(3), as amended.   Further, plaintiffs' counsel states the following in support:

> Plaintiffs are seeking certification of their state law unpaid wages and overtime claims under Rule 23 (b)(3). As such, they will demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Further, the Court must define the class and class claims, issues, and defenses at the time of certification of the class pursuant to Rule 23(c) and must appoint class counsel pursuant to Rule 23(g).

**ECF Doc. 219** at p. 8.  Counsel seeks FRCP 23 certification of state law wage and overtime claims on the grounds that class claims can "demonstrate that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members' and that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy,'" citing FRCP 23(b)(3).   Taste of Mao defendants argue this appraisal is incorrect.

Counsel states "the Court must define the class and class claims, issues, and defenses at the time of certification of the class pursuant to Rule 23(c) and must appoint class counsel pursuant

to Rule 23(g)." Id.   Taste of Mao defendants argue deficiencies will prevent certification. Preponderance of the evidence will establish whether each of FRCP 23's requirements have been met. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).   Plaintiffs' counsel cites caselaw largely decided prior to the Wal-Mart, Inc. v. Dukes case above.

### 3.   Evaluating the Proposed Class and Class Representatives

### (a) Ascertainability

The first factor, not specifically enunciated in the statute, is ascertainability—whether a class may be readily "ascertained" from the record.   Although a plaintiff need not identify individual class members prior to class certification, he must show that there is an available method to identify class members based on objective criteria. This method must be "reliable and administratively feasible, and permit[] a defendant to challenge the evidence used to prove class membership." Carrera v. Bayer Corp., 727 F.3d 300, 307 (3rd Cir. 2013).   It should not require mini-trials or "extensive and individualized fact finding." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 356 (3rd Cir. 2013).   The ascertainability requirement "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3rd Cir. 2012). It protects absent class members by making it more likely that they will receive notice. And it helps ensure that defendants know who is in the class and bound by the judgment.   The need to rely solely on affidavits from class members to prove class membership raises due process concerns and may be insufficient to establish ascertainability. Carrera, 727 F.3d 308-12; Marcus, 687 F.3d 584.

Plaintiffs reference ascertainability as follows: "Plaintiffs' proposed class definition, which covers a putative class of more than 60 of Defendants['] employees, satisfies this requirement. See Affirmation of John Troy ¶ 1. Membership in the proposed class can be ascertained by reference

20

to Defendants' records. Consequently, these putative class members are ascertainable." **ECF Doc. 219** at 10.    Referring to the Declaration of John Troy ¶ 1 yields the following class:  "All individuals who were employed or are currently employed by Defendants in any tipped or non-tipped non-exempt positions during the six years immediately preceding the initiation of his action up to the date of the decision on this motion." **ECF Doc. 218 at ¶ 1**.  It remains to be seen whether this class definition is "ascertainable," but it conflicts with the conditional certification by the Court: "cooks, deliveryman and food packers." **ECF Doc. 72**.    The definition is misleading, in that the reality is that plaintiffs are trying to shoehorn in a class of 60 vague, unnamed persons who are pressing purely state claims in federal court.  The class is not properly "ascertained."

### (b) FRCP 23(a)(1): Numerosity

The parties are into this litigation some 3.75 years and should have a pretty good idea by this time of how many potential litigants there might be.  However, other than seven (7) affiants and in vaguely alleged hearsay of "more than 50" others (not 60 as plaintiffs' brief alleges) there are no more than seven and, maybe, some others.  Counsel correctly states that in the Second Circuit, a class of 40 or more raises a "presumption of numerosity," citing <u>Ansoumana v. Gristede's Operating Corp.</u>, 201 F.R.D. 81, 85 (S.D.N.Y. 2001).   In the case cited, the court went through an analysis and found that out of a potential class of 1,000 some 345 individuals had opted in. <u>Id</u>. at 85-86.  Nothing like that set of facts is found in this case.  Plaintiffs, at this point, have identified 4 or 7 or 9, at most, plaintiffs.  Numerosity is far from met in this case.

Rule 23(a)(1) requires the plaintiff to show that "the class is so numerous that joinder of all members is impracticable." A finding of numerosity must be based on direct or circumstantial evidence and not on speculation, even if it is "tempting to assume" that there must be a large number of class members. <u>Marcus</u>, 687 F.3d 595-97.  Numerosity should be shown for each

proposed class and subclass.  Id. at 595.   Plaintiffs fail the Second Circuit test among others. Instead, plaintiffs rely upon "reasonable inferences from available facts."  **ECF Doc. 219** at p. 10.

### (c) FRCP 23(a)(2): Commonality

Plaintiffs' counsel alleges: "The commonality requirement is satisfied when plaintiffs and putative class members share a common question of laws or fact. Thus, when all of the proposed class members' claims derive from a common policy or plan and are based on the same legal theory, the commonality requirement is met." (citations omitted).  **ECF Doc. 219** at 11. Defendants do not disagree with these statements, but plaintiffs fail to have shown their existence.

Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common to the class." Before the Supreme Court issued its decision in Dukes, commonality was easily shown because "any competently crafted class complaint literally raises common questions." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 349.   After Dukes, however, merely reciting a list of common questions is insufficient. Instead, "[w]hat matters ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." The class members' claims "must depend upon a common contention .... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.   A court deciding the commonality of factual issues must rigorously analyze the plaintiff's contention that they can be proven on a classwide basis, including any evidence offered to back up that contention. **See**, e.g., M.D. v. Perry, 675 F.3d 832, 839-45 (5th Cir. 2012).   Plaintiffs utterly fail to show that there was a common plan among restaurant owners to deprive their workers of minimum wage and overtime. Plaintiffs fail in their conceit of attempting to show that there was a "chain" of "Hunan Manor" restaurants, as the workers were baffled when questions about the restaurants were put to them in

the EBTs. **ECF Doc. 238-15**, EBT Excerpts for Yong Kang Liu, 04/16/2019 Tr. 14:2-15:15.

Plaintiffs fail to show that Taste of Mao defendants, cross-moving, had any plan to depress wages.

### (d) FRCP 23(a)(3): Typicality

Rule 23(a)(3) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement determines whether the legal or factual position of the named plaintiff "is markedly different" from the position of other class members. Marcus, 687 F.3d 598. Courts consider whether: (1) the named plaintiff's claims are generally the same as those of other class members with respect to the relevant legal theory and factual circumstances and/or (2) the named plaintiff is subject to a unique defense that will likely become a major focus of the litigation. It is usually sufficient to show that the claims of the named plaintiff and class members "arise from the same event or pattern or practice and are based on the same legal theory." Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012). They need not be identical and some variation is permissible. Id. However, significant differences in the underlying facts may preclude a finding of typicality. Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019-20 (9th Cir. 2011). Commonality is said to be related closely to typicality, merging into similar analysis.

Commonality and typicality merge in analyzing these plaintiffs' claims, but assuredly diverge from the class claims due to individual distinctions among proposed class representatives. While plaintiffs fail to make these distinctions, Taste of Mao defendant Xiao, in her affidavit, makes it clear that there were two work areas and two categories of employees: (a) the back of the restaurant, which consisted of the kitchen, food storage areas, dishwashing, etc., and (b) the front of the restaurant, which consisted of the dining room, cashier, delivery and take out, etc. In the back of the restaurant, where kitchen workers were located, doing manual labor, and, as alleged,

23

almost none of which workers spoke or understood English as it was not a job requirement, there was a much more labor-intensive environment than the front of the restaurant where English was spoken, customers were served, where money was handled.  Chen is alleged by defendants to have managed the kitchen, an overtime exempt job, as explained further below.  (He was known as "the big man" or "the big guy").  There were considerable differences between pay in the back and the front.  Back kitchen workers made much more money full-time, but front workers made an hourly wage plus tips.[4]  Waiters, for example, received a salary of $400/week but received $100 per day in tips.  This meant they were earning about $785/week for 38 hours for 5 days.  Judge Daniels found there was a *"lawful"* payment practice as to waiters and waitresses.  The Judge also found their hourly base rate without tips was $7.50—higher than federal minimum wage—excluding them from conditional certification of the class.  **ECF Doc. 72**.   From the record, it appears there were different pay practices:: kitchen, monthly rate; deliveries, daily rate; waiters/waitresses, hourly rate.  As a result, there was no real commonality or typicality among these workers.

### (e)  FRCP 23(a)(4): Adequacy

Rule 23(a)(4) requires the plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy requirement seeks to "uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997).  It calls for a determination of whether the "interests and incentives between the representative plaintiffs and the rest of the class" are aligned or antagonistic. Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3rd Cir. 2012)  Intra-class conflicts may arise when class members seek conflicting remedies or some class members actually benefit from the challenged conduct. Dewey, 681 F.3d 184. Where an intra-class

---

[4]Delivery persons earned tips: $60-$70/day, 700-$750/wk. total, Tian Affidavit, **ECF Doc. 238-8**.

conflict is alleged, the court should determine whether it is fundamental and real rather than speculative. Id. A court may find a lack of adequacy if the class action is truly not in the interests of class members. This can occur when plaintiffs seek relief "that duplicates a remedy that most [other plaintiffs] already have received and that remains available" to class members, and adds the significant cost of providing notice and paying attorneys' fees to class counsel. In re: Aqua Dots Prods. Liability Litig., 654 F.3d 748, 752 (7th Cir. 2011). Some courts consider whether the named plaintiff will adequately represent the interests of class members with respect to the conduct of the litigation, i.e., does he understand the class claims, is he kept informed about the status of the litigation and will he control the actions of class counsel? Griffin v. GK Intelligent Sys., Inc., 196 F.R.D. 298, 301 (S.D. Tex. 2000). Other courts view these requirements as "unrealistic" given the "nominal" role of the named plaintiff in a lawsuit that "is in fact entirely managed by class counsel." Phillips v. Asset Acceptance, LLC, 763 F.3d 1076 (7th Cir. 2013). Before 2003, courts also considered the "competency and conflicts of class counsel." Amchem, 521 U.S. at 626 n.20. Some courts now address that issue when appointing class counsel under Rule 23(g), while other courts continue to address it under Rule 23(a)(4). Dewey, 681 F.3d at 181 n.13; Gomez v. St. Vincent Health, Inc., 649 F.3d 583, 591-93 (7th Cir. 2011).

Plaintiffs' counsel makes glib statements about the class representatives, that they will adequately protect class interests, although counsel is aware of glaring conflicts that have occurred during this case among class representatives.   Following are the alleged class representatives:

1.   *Shi Meng Chen*, alleged cook (long-term).
2.   *Lianhe Zhou*, alleged cook (short term).
3.   Yong Kang Liu, no allegations provided, should be deleted from class.
4.   *Jixiang Wang*, alleged cook.
5.   Wei Min Zhu, alleged "kitchen staff," appetizers and cold food.     Excluded from conditional certification District Judge Daniels.
6.   *Baojun Tian*, alleged deliveryman.

7.      Xinlong Liu, alleged waiter.  Excluded from conditional certification of class by District Judge Daniels.

8.      Qifang Chen, no allegations provided, should be deleted from class.

9.      *Pingjin Fan*, alleged to be "sorter" This plaintiff opted in after Judge Daniels certified a class of cooks, deliverymen and food packers.  Fan's job as "sorter" was not a "food packer."  The job was like a prep cook, or assistant to the cooks, kitchen staff.

As a result, there are now three cooks and one deliveryman as *bona fide* representatives.  The sorter probably should not be included as with Zhu, not court-certified, the duties were "kitchen staff."

At this point, it is appropriate to assess Shi Ming Chen's status as a "cook" among the conditionally certified class.   Chen was head chef or head cook, a kitchen manager, termed by management and the Chinese workers as a "big man" or "big guy."  Chen's position managed the "back" of restaurants where he worked, while there was a parallel "front" manager who handled the front of the restaurant.  The back was labor-intensive with workers uniformly conversing in Chinese; the front was a customer-oriented area with workers speaking in both Chinese and English.  There was no language requirement for the back; English was required for the front.  A general manager oversaw both the front and back managers for each restaurant.  Taste of Mao defendant Xiao worked as a general manager at two of her cousins' restaurants from 2011 to 2016; she worked as general manager at Taste of Mao, Inc. d/b/a China Xiang 2016 to 2019.  See, generally, 11/10/2020 Xiao Affid.  Chen's status is established in the record as kitchen manager:

1.      **Exhibit "2," ECF Doc. 238-2**, Excerpts from EBT of Zhenqi Xiao, 04/01/2019 Tr. 19:11-23:18, 25:3-10, 35:5-36:7, 39:3-42:13.

2.      **Exhibit "3, ECF Doc. 238-3**, Excerpts from EBT of Jingchao Li, 04/12/2019 Tr. 45:15-46:19, 59:25-62:6.

3.      **Exhibit "15," ECF Doc. 238-15**, Excerpts from EBT of Yong Kang Liu, 04/16/2019 Tr. 37:21-25, 46:17-47:25. (Yong Kang Liu did not appear on the Rule 23 Motion.)

4.      **Exhibit "16," ECF Doc. 238-16**, Excerpts from EBT of Jixiang Wang, 05/09/2019 Tr. 20:3-21:6, 33:2-25.

5.      **Exhibit "18, ECF Doc. 238-18**, Excerpts from EBT of Shi Ming Chen, 04/16/2019 Tr. 18:11-19:20, 23:4-24:10. (Chen evasive, claiming no English knowledge, partially true.)

6.      **11/10/2020 Xiao Affid**. ¶¶ 8, 10, 11(a)(i),(ii),(iii),(iv),(vi),(vii),(viii).

FLSA 29 U.S.C. § 213(a)(1) contains a minimum wage and overtime exemption for employees employed in a "bona fide executive, administrative or professional capacity."    To qualify for the FLSA executive overtime exemption, all of the following tests must be met:

- The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $684.00 per week [generally];
- The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;
- The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and
- The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

29 CFR § 541.100 (eff. 09/27/2019).  Prior to 09/27/2019, the executive exempt rate was $455/wk. Chen, when he left A Taste of Mao, Inc. in December 2016 was earning $4,000/month as kitchen manager, which breaks down to $923.08 per week, far above the required minimum.

As a result, Chen does not present an adequate class representative for the members of this suit and, in fact, given his management responsibilities, he is an *in*adequate representative.

Plaintiffs' Rule 23 class fails on ascertainability, numerosity, commonality/typicality and adequacy.  It is thus somewhat futile to conduct review under FRCP 23(b)(3) below.

### (f) FRCP 23(b)(3): Predominance & Superiority

Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3) also requires the court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Supreme Court requires courts to take a "close look" at whether the "demanding" prerequisite of predominance has been met. Comcast, 133 S. Ct. at 1432-35. Predominance will not be established merely because the majority of contested issues are common (i.e., capable of classwide proof) rather than individual (i.e., requiring factual evidence from each class member or a separate legal analysis of each class members' claims). Instead, the court must analyze the elements of the parties' claims and defenses and the nature of the evidence that will be presented at trial, compare the relative importance of the contested issues in the case, Butler v. Sears, Roebuck & Co., 727 F.3d 796, 801 (7th Cir. 2013) and make "some prediction as to how specific issues will play out." Marcus, 687 F.3d at 600.

The matters pertinent to findings of whether a class action is superior include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." When addressing this requirement, the court should "compare other means of disposing of the suit" (such as individual actions) and determine if a class action is superior to them when considering issues like judicial economy, the rights of absent class members, prior dispositive rulings on liability and the size of

28

likely damage awards. <u>Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.</u>, 654

F.3d 618, 630-32 (6th Cir. 2011). Superiority may be absent if there is a wide variation in state

laws, an inability to identify and provide notice to class members<u>, In re: Aqua Dots Prods. Liability</u>

<u>Litig.</u>, 654 F.3d at 752,  or a large number of individualized inquiries. <u>Pipefitters Local 636 Ins.</u>

<u>Fund</u>, 654 F.3d at 631. However, courts should not conclude that a class action is not superior

merely because of the need to determine individualized claims for damages. <u>Leyva v. Medline</u>

<u>Indus., Inc.</u>, 716 F.3d 510, 515 (9th Cir. 2013).

The claims in this case, such that they can be articulated, are individual not class-related

so the predominance test is not met.   The class action is not a superior means to litigate the claims

in this case, as, such as they are, the claims can be litigated either as individual federal claims or

claims in state court.  Management of this class has been nearly impossible for plaintiffs' counsel.

The case also fails tests of ascertainability, numerosity, commonality/typicality and adequacy.

### B.  Counsel Has Been Unable to
### Manage Alleged Class Claims & to Control the Class

While plaintiffs' counsel is a well-seasoned professional, clearly very busy with a large

caseload of FLSA cases, he has been overwhelmed by his clients in this matter, who have clearly

not cooperated with the litigation.   Counsel, under the rubric of "superiority" above, complains

that his clients have more or less not cooperated because, according to counsel: "The putative class

consists almost exclusively of Chinese immigrants with poor English skills and limited means and

circumstances, and many of them may not wish to litigate individually for fear of exposing the

status of their stay in this country." **ECF Doc. 219** at 15.   Counsel's answer to this problem is

that the Court must certify the class to protect his clients. He also engages in conspiracy theories

alleging that captioned defendants and, presumably, Taste of Mao defendants have engaged in

"reprisals" without specifying what this is supposed to mean, so he turns to the Court again.

29

In the meantime, the Court dismissed defendants, the New Jersey restaurant and two of its owners, and six plaintiffs from the case.[5]   The plaintiffs were dismissed for failing to appear for their EBTs or because they went back to China.   It took more than two years to get the rest of the plaintiffs, who reluctantly appeared, to show up for depositions.  The six dismissed plaintiffs had been absent for three years from the litigation, not appearing for EBTs for two years.  Taste of Mao defendants cannot be blamed for this state of affairs.  Even now, counsel, on the Rule 23 Motion, has been unable to produce two of the nine remaining plaintiffs, producing only seven. Again, captioned defendants and Taste of Mao defendants cannot be blamed for this either.

In order to prepare for this Motion, the undersigned, who has litigated FLSA cases on both sides as both plaintiff's and defendant's attorney, investigated the case and found out that one of the plaintiffs had engaged in a double-cross of both sides.  This person, Jian Cai, who appears on documents for three years, even on affidavit captions submitted on the present motion, apparently when the case began was not sure he wanted to be in the case.  So, Mr. Cai, who told plaintiffs' counsel that he wanted to be a party plaintiff and filed a consent on 02/02/2017, when the case was filed, separately and secretly approached one of the defendants' restaurants and entered into a settlement agreement.  **Exhibit "13," ECF Doc. 238-13**, dated 07/03/2017, prior to conditional class certification.[6]  Notably, when plaintiffs filed their motion for FLSA § 216(b) certification, Mr. Cai did not join the Motion.  See **ECF Doc. 36** on 06/29/2017.   Counsel then had to chase Cai for three years to appear for his EBT.   Plaintiffs' counsel evidently became aware of the

---

[5] Although not addressed on the cross-motion, defendant Hunan Manor Enterprise, Inc. should be dismissed from the case, as there is no restaurant or other connection of this company to this case.

[6] As the undersigned understands it, at the beginning of the case in 2017, there was a great deal of confusion and defendants engaged with Cai not realizing he was in the case.  The only person who knew what was going on was Jian Cai, taking advantage of the defendants and plaintiffs' counsel.

situation because he brought Cai to court before Judge Gorenstein on 03/10/2020, on a pending Motion to Withdraw as counsel for Mingda Ke and Jiang Min. **Exhibit "12," ECF Doc. 238-12**. Counsel mentioned the Cai settlement at that appearance. However, instead of using the appearance to withdraw for the two individuals, plus Cai, plaintiffs withdrew their Motion. Judge Gorenstein dismissed six plaintiffs, including Cai, on June 30, 2020.

The undersigned casts no aspersions on anyone, but it is clear what with the pandemic and lack of client cooperation, plaintiffs' counsel has had a nightmare controlling his class of plaintiffs. But this is no excuse for blaming captioned defendants, Taste of Mao defendants or their counsel, as they were victimized by Cai as much as Cai's attorney and cannot be blamed for client issues.

Although the Rule 23 class is not sustainable, plaintiffs' counsel in this one instance is not appropriate to represent the class in the event the Court approves the Rule 23 Motion, as he has had little or no control over the class plaintiffs in this action.

### III.    The FLSA Claims in this Matter Should Be Dismissed Which Will Cause Supplemental Jurisdiction to Fail

Taste of Mao defendants cross-move to decertify FLSA conditional class certification, to dismiss the FLSA claims and vacate pendent jurisdiction.    Plaintiffs have engaged in forum-shopping using defective FLSA claims to gain federal court jurisdiction, which should result in dismissal of this case and the further declining of jurisdiction over New York State claims.

This case cannot be cured as it has been defective jurisdictionally *ab initio*.  Plaintiffs used defective federal jurisdiction to shoehorn their way into federal court with State law claims. Because there is no demonstrable FLSA violation under the facts, the state law supplemental claims should be dismissed to be pursued in State court, if possible.  Lusk v. Serve U Brands, Inc., 17-cv-06451 (W.D.N.Y. 2018), Ouedraogo v. Durso Assocs., Inc., 03-cv-1851 (S.D.N.Y. 2005), Palmer v. Trump Model Management, LLC, 175 F.Supp.3d 103 (S.D.N.Y. 2016).

CONCLUSION

Wherefore, based on the foregoing arguments and evidentiary material, plaintiffs' Rule 23

Motion to certify New York State class claims should be denied in all respects, FLSA claims

should be decertified and dismissed and supplemental jurisdiction vacated and further declined,

either dismissing the State claims or remanding those claims to the New York State court system.

Dated:          Rego Park, New York
                November 16, 2020*

Respectfully submitted,

Michael R. Curran
Attorney for A Taste of Mao, Inc.
     & Ms. Zhenqi Xiao

*With permission of
  Hon. Gabriel W. Gorenstein
  United States Magistrate Judge