**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
– – – – – – – – – – – – – – – – – – – – – – – – – – x

SHI MING CHEN, LIANHE ZHOU, YONG
KANG LIU, JIXIANG WANG, WEI MIN ZHU,
BAOJUN TIAN, XINLONG LIU, QIFANG CHEN,
and PINGJIN FAN,

                         Plaintiffs,

    –against–

HUNAN MANOR ENTERPRISE, INC., D/B/A
HUNAN MANOR, HUNAN MANOR LLC, D/B/A
HUNAN MANOR, HUNAN HOUSE MANOR
INC. D/B/A HUNAN MANOR, HUNAN HOUSE
RESTAURANT, INC. D/B/A HUNAN MANOR,
HUNAN HOUSE RESTAURANT NY LLC D/B/A
HUNAN MANOR, HUNAN HOUSE, INC. D/B/A
HUNAN MANOR, A TASTE OF MAO, INC.
D/B/A CHINA XIANG, JINGCHAO LI A/K/A
JING CHAO LI A/K/A DIANA LI, ZHIDA LI
A/K/A ZHI DA LI A/K/A ALAN LI, and ZHENQI
XIAO A/K/A NANCY XIAO,

                        Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – x

                             <u>MEMORANDUM DECISION</u>
                               <u>AND ORDER</u>

                      17 Civ. 802 (GBD) (GWG)

GEORGE B. DANIELS, District Judge:

      Plaintiffs Shi Ming Chen, Lianhe Zhou, Yong Kang Liu, Jixiang Wang, Wei Min Zhu,

Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan (collectively, "Plaintiffs") bring this

action against Defendants, Hunan Manor Enterprise, Inc., Hunan Manor LLC, Hunan House

Manor Inc., Hunan House Restaurant, Inc., Hunan House Restaurant NY LLC, Hunan House, Inc.,

A Taste of Mao, Inc., Jingchao Li, Zhida Li, and Zhenqi Xiao (collectively, "Defendants"),

alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et

seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. L. §§ 650 *et seq.* (First Am.

Compl. ("FAC"), ECF No. 182, ¶ 1.) Plaintiffs allege that during their employment at Defendants'

restaurants, Defendants failed to pay Plaintiffs minimum wages, overtime wages, and spread of

hours pay, under the FLSA and NYLL, and failed to provide wage statements, wage notice and pay stubs under the NYLL. (*Id.* ¶¶ 1–5.)

From February 13 to March 13, 2023, this Court held a bench trial to adjudicate Plaintiffs' claims against Defendants. (*See* Transcript of Bench Trial ("Tr."), ECF Nos. 320, 322, 324, 326, 328, 330, 332.)   This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52 on whether Defendants are liable for violating the FLSA and the NYLL, including whether Defendants' restaurants qualify as a single integrated enterprise under the labor laws.

This Court finds as follows:

i.     Plaintiffs Yong Kang Liu and Jixiang Wang's claims are dismissed with prejudice under Fed. R. Civ. P. 41(b) due to Liu and Wang's failure to appear at trial.

ii.    Defendants' restaurants were a single integrated enterprise and Defendants are therefore jointly and severally liable to Plaintiffs.

iii.   Defendants are liable to certain Plaintiffs for violating the overtime and minimum wage provisions of the FLSA and NYLL.

iv.    Defendants are not liable to Plaintiffs for spread of hours pay.

v.     Plaintiffs do not have standing to recover damages against Defendants for Defendants' violations of the NYLL's wage notice and wage statement provisions.

vi.    Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan are awarded a total of **$616,386.40**, plus all applicable interest.

## I.     BACKGROUND

Plaintiffs commenced this instant action on February 2, 2017.  (ECF No. 1.)  On April 23, 2017, Defendants answered Plaintiffs' Complaint.  (ECF No. 28.)  Over the next nearly six years between April 2017 and February 2023, Plaintiffs and Defendants conducted discovery and filed numerous pre-trial motions.  During that time, multiple Defendant restaurants filed bankruptcy petitions. (*See* ECF Nos. 57, 90.)

On February 13–15, March 2, March 7, and March 13, 2023, this Court held a bench trial to adjudicate Plaintiffs' claims against Defendants. Plaintiffs appeared and testified at trial, except for Yong Kang Liu and Jixiang Wang, who failed to appear. All three individual Defendants appeared and testified at trial. Plaintiffs and Defendants subsequently filed proposed findings of fact and conclusions of law. (Pls.' Mem., ECF Nos. 336; Taste of Mao Defs.' Mem., ECF No. 343; Hunan Manor Defs.' Mem., ECF No. 344, Pls.' Reply, ECF No. 345; Defs.' Sur-Replies, ECF Nos. 349 and 350.)[1]

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 52(a) provides, in relevant part, that a court conducting a bench trial "must find the facts specially and state its conclusions of law separately," and that "[j]udgment must be entered under Rule 58." Fed. R. Civ. P. 52(a)(1). Rule 52(a) further provides that such "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

## III.   FINDINGS OF FACT

The following section constitutes this Court's Findings of Fact pursuant to Fed. R. Civ. P. 52(a)(1).[2] These Findings of Fact are drawn from the testimony at trial and the parties' trial exhibits.

---

[1] For ease of reference, this Court refers to Defendants Hunan Manor, Zhida Li, and Jingchao Li's memorandum of law as "Hunan Defs.' Mem." (ECF No. 344) and to Defendants A Taste of Mao and Zhenqi Xiao's memorandum of law as "Taste of Mao Defs.' Mem." (ECF No. 343).

[2] To the extent that any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and vice-versa.

## A.   Defendants

### i.   Defendant Jingchao Li

Defendant Jingchao Li is the older sister of Defendant Zhida Li, and the older cousin of Defendant Zhenqi Xiao. Jingchao Li owned and operated Hunan House, which opened in June 2014 and was located at 40 W. 56th Street in Manhattan.  Hunan House was operated by Hunan House, Inc., which Jingchao Li owned and operated as its President, with  Zhenqi Xiao serving as Vice President.  From June 2014 until on or about around October 2014, Jingchao Li and Zhenqi Xiao jointly operated Hunan House.  At Hunan House, Jingchao Li determined employees' wage rates, distributed pay, determined work schedules, and directed employees to record their working time.  In her testimony, Jingchao Li also stated that she was aware of overtime requirements if an employee worked over 40 hours in a week.[3]

In 2013, Jingchao Li also worked at Hunan House Manor, which was owned by Zhenqi Xiao.  There, Jingchao Li had the authority to hire employees, exercised authority over employees' working hours, distributed employees' pay when Zhenqi Xiao was not available, and provided the restaurant with supplies.

Beginning in 2011, Jingchao Li also periodically helped her brother, Zhida Li, with operating Hunan House Restaurant.  There, Jingchao Li had the power to hire and promote employees and distributed employees' pay.

### ii.   Defendant Zhida Li

Defendant Zhida Li is the younger brother of Defendant Jingchao Li.  Zhida Li owned and operated Hunan House Restaurant, located at 137–40 Northern Boulevard in Flushing, New York.  At Hunan House Restaurant, Zhida Li hired employees and distributed employees' pay.

---

[3] Tr. 670:25–670:13 ("I try my best not to have overtime . . . we were aware that every week, if it's over 40 hours of work during the week, it's time and a half pay.").)

From August 2015 to November 2017, Hunan House Restaurant was operated by Hunan House Restaurant NY LLC, in which Zhida Li had an ownership stake. From time to time, Zhida Li was involved in operating Hunan House, which was owned by his sister Jingchao Li. At Hunan House, Zhida Li directed the work of employees. Zhida Li was also the President of Hunan Manor, LLC, which operated Hunan House Manor after 2015.

### iii.   Defendant Zhenqi Xiao

Defendant Zhenqi Xiao is the younger cousin of Defendant Jingchao Li.[4] Xiao helped to operate Hunan House, which was owned by Jingchao Li. At Hunan House, Xiao directed, interviewed, and fired employees, managed their schedules and wage rates, and distributed employees' pay. Xiao also directed at least one Plaintiff to sign a wage notice. Xiao retained that wage notice after it had been signed. When asked about a document that listed her as the "Vice President" of Hunan House, Xiao stated that she has "always been the manager" there. Documents admitted into evidence also list Xiao as the "vice president" of Hunan House Inc. Xiao was also the owner and operator of Hunan House Manor, which was operated by Hunan House Manor, Inc. Xiao was the sole owner of Hunan House Manor, Inc.

Xiao was also the owner of restaurant China Xiang, located at 360 W 42nd Street in New York. China Xiang was operated by A Taste of Mao, Inc., which was partially owned by Defendant Zhenqi Xiao from 2013 to 2016, and wholly owned by Xiao after about January 2016. At China Xiang, Defendant Zhenqi Xiao had the power to hire employees, determined employees' work schedules and pay, and had at least one Plaintiff sign a wage notice that Xiao then retained.

---

[4] While Plaintiffs' submissions describe Defendant Zhenqi Xiao as Defendant Diana Li's younger sister (Pls.' Mem. at 6), Defendants' testimony at trial consistently referred to Xiao as Li's younger cousin. (*See, e.g.*, Tr. 659:13–18, 660:6–7, 667:13–16.)

**B.     Plaintiffs**

Plaintiffs all worked at Defendants' restaurants from 2011 to 2017. Plaintiffs worked at multiple restaurant locations owned by Defendants because they were moved from restaurant to restaurant at the direction of Defendants.

**i.     Plaintiff Shi Ming Chen**

Plaintiff Shi Ming Chen worked at multiple Defendant restaurants as an ingredient sorter and later as a cook from on or about February 2, 2011 through on or about September 8, 2016. Throughout the course of his employment, Chen worked six days per week and approximately 60 hours per week. He was paid on a salaried basis ranging from $3,000 to $4,000 per month.[5] Chen was not paid overtime, although Defendants' own records stated that he was entitled to receive overtime pay.[6] Like all Plaintiffs, Chen was paid via a combination of cash and check.[7]

**ii.    Plaintiff Lianhe Zhou**

Plaintiff Lianhe Zhou worked for Defendants as a sauté cook from on or about June 15, 2014 to on or about June 12, 2016. Throughout the course of his employment, Zhou worked six

---

[5] From February 2011 until January 2012, Chen was paid a salary of approximately $3,000 per month. From February 2012 through December 31, 2012, Chen was paid a salary of approximately $3,400 per month. Beginning in January 2013 through August 10, 2014, Chen was paid a salary of approximately $3,500 per month. From August 11, 2014 to March 7, 2015, he was paid $3,600 per month. From March 8, 2015 through September 6, 2015, he was paid $3,700 per month. From September 7, 2015 to February 21, 2016, he was paid $3,800 per month. From March 1, 2016 to June 30, 2016, he was paid $3,900 per month. From July 2016 through on or about September 8, 2016, he was paid $4,000 per month.

[6] For example, one of Shi Ming Chen's wage notices lists his rate of pay as $13.80 per hour, with an overtime rate of pay of $20.70 per hour. Yet that rate of pay differs from Chen's pay receipts for the same period, which set forth an hourly rate of pay ranging from $9.00 to $12.81 per hour, and an overtime rate of pay ranging from $13.50 to $18.32 per hour.

[7] Chen testified that how much he was paid in cash or check varied, but was sometimes half in cash, half in check. (Tr. 266:1–3, 238:15–16.)

days per week and approximately 60 hours per week. He was paid on a salaried basis ranging from $3,400 to $3,500 per month.[8] Zhou was not paid overtime.

### iii.    Plaintiff Wei Min Zhu

Plaintiff Wei Min Zhu worked for Defendants as a vegetable chopper and food preparer from on or about March 1, 2015 to on or about July 31, 2016. Throughout the course of his employment, Zhu worked six days per week and approximately 55 hours per week. Zhu was paid on a salaried basis ranging from $2,290 to $2,400 per month and was not paid overtime.[9]

### iv.    Plaintiff Baojun Tian

Plaintiff Baojun Tian worked for Defendants as a deliveryman from on or about May 16, 2015 to on or about August 30, 2015. Throughout the course of his employment, Tian worked five days per week and approximately 50 hours per week. Tian was paid on a salaried basis of $1,000 per month and was not paid overtime.

### v.    Plaintiff Xinlong Liu

Plaintiff Xinlong Liu worked for Defendants as a waiter from on or about September 7, 2015, to on or about April 9, 2017. Throughout the course of his employment, Liu worked approximately 4 days per week and 9.5 hours per day, amounting to approximately 38 hours per week. Liu was paid on an hourly basis of approximately $7.50 per hour. Because Liu did not work over 40 hours per week, he did not receive and was not entitled to overtime pay.

---

[8] From June 15, 2014 to September 20, 2014, Zhou was paid $3,400 per month. From March 18, 2016 to June 12, 2016, Zhou was paid $3,500 per month.

[9] From March 1, 2015 to November 15, 2015, and from November 30, 2015 to July 31, 2016, Zhu was paid a monthly salary of 2,400 per month and worked approximately 55 hours per week. During a two–week period between November 16, 2015 and November 29, 2015, Zhu was paid $1145.00 each fortnight, or $572.50 per week and worked approximately 55 hours per week.

### vi.    Plaintiff Qifang Chen

Plaintiff Qifang Chen worked for Defendants as a waitress from on or about July 27, 2014, to on or about October 30, 2016.[10]  Throughout the course of her employment, she worked approximately 4.5 days per week and approximately 10 hours per day, amounting to approximately 45 hours per week. She was paid $7.50 per hour, amounting to approximately $335 per week. She was not paid overtime.

### vii.   Plaintiff Pingjin Fan

Plaintiff Pingjin Fan worked for Defendants as an ingredient preparer and cook from on or about March 1, 2015 to on or about November 12, 2017.  Throughout the course of his employment, Fan worked six days per week, 9 to 10 hours per day, amounting to approximately 54 to 60 hours per week.  Fan was paid on a salaried basis ranging from $2,400 to $3,100 per month.  Fan was not paid overtime. [11]

### C.    Records

Defendants concede that "their recordkeeping was not the best." (Mao Defs.' Br. at 17; *see also* Tr. 30:14–22.)  It is undisputed that Defendants did not maintain adequate records of the hours and wages that Plaintiffs worked.  For example, Defendants failed to keep records of

---

[10] Qifang Chen's employment with Defendants was periodic, and her employment dates are as follows: She worked for Defendants from July 27, 2014 to on or about November 1, 2014, from November 16, 2014 to on or about January 10, 2015, from January 25, 2015 to on or about March 21, 2015, from May 18, 2015 to on or about July 12, 2015, and then from September 7, 2015 to on or about January 24, 2016, then from May 16, 2016 to on or about October 30, 2016.

[11] Pingjin Fan received incremental raises in pay while working for Defendants.  When he was hired on March 1, 2015 to on or about May 15, 2015, Fan was paid $2,400 per month.  From May 16, 2015 to July 31, 2015, Fan was paid $2,500 per month. From August 1, 2015 to October 15, 2015, Fan was paid $2,600 per month.  From October 16, 2015 to December 31, 2015, Fan was paid $2,700 per month. From January 1, 2016 to February 28, 2016, Fan was paid $2,800 per month.  Fan did not work for Defendants between February 29, 2016 and November 11, 2016. From November 12, 2016 to December 31, 2016, Fan was paid $2,900 per month.  From January 1, 2017 to February 15, 2017, Fan was paid $3,000 per month. From February 16, 2017 until his firing on November 12, 2017, Fan was paid $3,100 per month.

multiple Plaintiffs' pay for months-long periods in 2014, 2015, and 2016, but created printed paystubs for Plaintiffs during the same period. Notably, many of the records and paystubs that Defendants produced were inaccurate. Defendants' records misstated employees' rate of pay, hours worked, and breaks taken. (*See* Tr. 59:25–60:19.) Further, because Defendants routinely paid Plaintiffs through a combination of cash and check, Defendants' records often misstated the total payment amount. At times, Defendants omitted the amount paid by check and included only the amount paid in cash, or vice-versa. Because Defendants failed to maintain adequate employment records, this Court relies on available documents in evidence and credible trial testimony in order to approximate Plaintiffs' dates of employment, hours worked, rate of pay, and compensation.

**D. Testimony**

In general, this Court finds Plaintiffs' Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan's testimony to be credible based on their demeanor at trial and their explanations for any previous inconsistent statements. *See Weng v. New Shanghai Deluxe Corp*, No. 19 Civ. 9596 (ER), 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("In assessing witness credibility, a trial court's findings of fact may be based on, among other things, 'the demeanor of the witnesses'") (quoting *Mendez v. Int'l Food House Inc.*, No. 13 Civ. 2651 (JPO), 2014 WL 4276418, at *5 (S.D.N.Y. Aug. 28, 2014)).

## IV. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Enterprise Liability**

This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367, because they form part of the same case or controversy. (Joint Pre-Trial Order ("JPTO"), ECF

No. 279, at 3.)  Venue is proper in the Southern District of New York, as Defendants conducted business in this District, and the acts or omissions giving rise to Plaintiffs' claims also took place in this District.

Under the FLSA, an employee may sue their employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. §§ 206(a), 207(a)(1), with an annual gross volume of sales of at least $500,000, *id.* § 203(s)(1)(A)(ii). Plaintiffs brings their FLSA claims pursuant to the theory of "enterprise coverage," and allege that, collectively, each Defendant restaurant was part of a business engaged in interstate commerce that had an annual gross volume of sales of over $500,000 for each of the relevant years. (*See* FAC ¶¶ 35–45.)  Defendants have stipulated to both factors and agree that this Court has subject matter jurisdiction over Plaintiffs' FLSA claims.  (JPTO at 3.)

As discussed below, this Court finds that Defendants' restaurants made up a single, integrated enterprise, and were thus a single employer for FLSA purposes.  "It follows that their gross annual sales may be combined to determine whether they satisfy the $500,000 enterprise–coverage threshold." *Yu Wei Cao v. Miyama, Inc.*, No. 15 Civ. 0266 (JS) (ARL), 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019) (citing *Draskovic v. Oneota Assocs., LLC*, No. 17 Civ. 5085, 2019 WL 783033, at *7 (E.D.N.Y. Feb. 21, 2019)).  Defendants' bankruptcy records and admissible exhibits indicate Defendants' gross volume of sales far exceeded the $500,000 threshold.[12]  Thus, the evidence supports the reasonable conclusion that Defendants' restaurants met the $500,000 gross annual sales threshold to satisfy enterprise coverage.  *See Miyama*, 2019

---

[12] *See, e.g.*, ECF No. 336, Ex. 9 (Decl. of Jingchao Li, dated May 9, 2018, lists Hunan House Inc.'s average monthly revenue as $250,000 per month); Tr. 705:8–20, 708:10–14; *see also* ECF No. 118, Ex. 2 (Decl. of Zhida Li, dated May 9, 2018, lists Hunan House Inc.'s average monthly revenue as about $560–600,000 per month.).

WL 4279407, at *9.  Because it is undisputed that Plaintiffs have satisfied both elements of enterprise coverage, Defendants are subject to the FLSA.  *See id.*

### i.   Single Integrated Enterprise

Defendants' restaurants were a single integrated enterprise and Defendants are thus jointly and severally liable to Plaintiffs.

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise . . ." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (citations and quotation marks omitted).  Under the FLSA, "multiple corporate entities can be liable as the 'employer' under 'a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations.'" *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (citation omitted).  Numerous district courts have used the "single integrated enterprise" test to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes.  *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases).

To determine whether distinct entities operate as a single integrated enterprise, courts consider "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (citation omitted). "Although no single factor is required or determinative, 'control of labor relations is the central concern.'" *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  Where the single integrated enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer[.]" *Arculeo*, 425 F.3d at 198; *see also Juarez*, 29 F. Supp. 3d at 368.

"With respect to restaurants in particular, facts that go to the existence of a single, integrated enterprise include common décor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses." *Marin v. APU Foods Corp.*, No. 17 Civ. 3224, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (citation and quotation marks omitted); *Miyama*, 2019 WL 4279407, at *7 (E.D.N.Y. Sept. 10, 2019).

Plaintiffs argue that Defendants' restaurants operated as a single integrated enterprise and that Defendants should be treated as Plaintiffs' single employer for their FLSA claims. (Pls.' Mem. at 33–35.) Defendants contend that enterprise liability does not exist, because Defendants' restaurants were just an "amateurish set of disparate family business[es][.]" (Taste of Mao Defs.' Br. at 13.)

The evidence at trial indisputably demonstrated that Hunan House Restaurant, Hunan House Manor, Hunan House, and China Xiang were a single integrated enterprise.[13] The evidence at trial established that Defendants jointly operated the restaurants and moved employees from restaurant to restaurant depending on business needs. Jingchao Li testified that, when Zhenqi Xiao's restaurant was under renovation, Xiao arranged for some of Xiao's employees to work at Jingchao Li's restaurant. When those employees moved over, Jingchao Li then directed those employees and supervised their work. It is undisputed that Plaintiffs moved back and forth to work at different restaurants after months-long stints at others, all at the direction of Defendants. (*See, e.g.*, Tr. 185:4–14, 187:5–10.) Notably, when Plaintiffs were moved from restaurant to restaurant,

---

[13] In the Defendant restaurants' respective bankruptcies, Defendants go so far as to aver that their restaurant's bankruptcy proceedings are "related" to the bankruptcies of their co-Defendants' restaurants. (*See, e.g.*, ECF No. 109, Ex. 2, at 1, 2.)

their pay, work schedules, and conditions of employment all remained the same. For example, when Plaintiff Baojun Tian was directed to move from working at Hunan House Manor, owned by Zhenqi Xiao, to working at Hunan House, owned by Jingchao Li, he was told he was moving over to "help out for a month" and his schedule, pay rate, and conditions of employment all remained the same. (*Id.* at 184:1–11.)

Defendants' testimony established that they demonstrated control over employees at the restaurants owned by their co-Defendants and could hire, direct, and fire employees at restaurants owned by their co-defendants. For example, Jingchao Li testified that she helped her brother, Zhida Li, in operating Hunan House Restaurant, where she had the power to hire, promote, and distribute pay to employees. Similarly, Jingchao Li also worked at her cousins Zhenqi Xiao's restaurant, Hunan House Manor, where she exercised control over employees. Jingchao Li testified that, at Xiao's restaurant, Li had the authority to hire employees, set their schedules and working hours, and distributed employees' pay. Jingchao Li also brought supplies to Xiao's restaurant.

Plaintiffs have also demonstrated that there was common management and common ownership of the Defendant restaurants among the individual Defendants. For example, between 2013 and 2015, Zhenqi Xiao was an owner of A Taste of Mao, Inc. and Hunan House Manor, Inc., while she also served as the general manager of Hunan House Manor, which was owned and operated by Zhida Li. Beginning in 2014, Zhida Li was an owner of Hunan Manor LLC and Hunan House Restaurant NY LLC, which operated Hunan House Manor and Hunan House Restaurant, respectively. Hunan House Restaurant ceased operating in November 2017, and Zhida Li then transferred from managing Hunan House Restaurant to managing Hunan House Manor. These facts reflect Defendants' shared ownership and financial control of the restaurants. *See Miyama*, 2019 WL 4279407, at *7.

Defendants may be held jointly and severally liable under the single employer doctrine. *Arculeo*, 425 F.3d at 198 (where single integrated enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer"); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); *see also Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011). This finding is consistent with the policy rationale underlying the single employer doctrine, namely, "the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12 Civ. 5565 (PKC) (RER), 2016 WL 4179942, at \*5 (E.D.N.Y. Aug. 5, 2016) (quotation omitted).

### ii. Employer

Defendants were Plaintiffs' employers. "For liability to attach under the FLSA or the NYLL, a defendant must be an 'employer.'" *Ruixuan Cui v. E. Palace One, Inc.*, No. 17 Civ. 6713 (PGG), 2019 WL 4573226, at \*6 (S.D.N.Y. Sept. 20, 2019) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).[14] Although the FLSA does not define the term "employer" in the first instance, it provides that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also Guerra v. Trece Corp.*, No. 18 Civ. 625 (ER), 2020 WL 7028955, at \*8 (S.D.N.Y. Nov. 30, 2020); *Weng*, 2022 WL 5434997, at \*4. An employee may simultaneously have multiple "employers" for

---

[14] The NYLL uses a nearly identical definition of the term "employer," and "[d]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." *Jianjun Chen v. 2425 Broadway Chao Rest.*, LLC, No. 16 Civ. 5735 (GHW), 2017 WL 2600051, at \*3 (S.D.N.Y. June 15, 2017) (quoting *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013)). Thus, courts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL. *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014).

purposes of determining responsibility under the FLSA. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003).

In deciding whether an individual defendant is an "employer," "the Second Circuit has instructed district courts to look to 'whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case.'" *See Miyama*, 2019 WL 4279407, at *7 (quoting *RSR*, 172 F.3d at 139 and *Draskovic*, 2019 WL 783033, at *7). Under the formal-control test, the relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *RSR*, 172 F.3d at 139. "That said, '[n]o one of the four factors standing alone is dispositive. Instead, the "economic reality" test encompasses the totality of circumstances . . .'" *Draskovic*, 2019 WL 783033, at *7 (alterations in original) (quoting *RSR*, 172 F.3d at 139).

The evidence presented at trial indisputably established that Defendants were Plaintiffs' employers. Irrespective of whether they were working at their own restaurants or restaurants that were owned or operated by their co-Defendants, Defendants had the power to hire and fire Plaintiffs, supervised and controlled work schedules and the conditions of their employment, determined the rate and method of payment, and maintained some employment records. Indeed, Defendants do not appear to dispute that they were Plaintiffs' employers and instead contend that Defendants "tried to pay their employees fairly for all hours worked" and that this case "boil[s] down into a retributive struggle between labor and management." (Taste of Mao Defs.' Mem. at 1, 3.) As the evidence at trial demonstrated, Defendants were Plaintiffs' employers under both the FLSA and the NYLL.

## B.    Burden of Proof

"The 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." *Hassoun v. Searls*, 968 F.3d 190, 202 (2d Cir. 2020) (citations omitted). "[Plaintiffs] bear[] the burden of proof in this case on each and every claim, as well as on the issue of damages." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 392 (E.D.N.Y. 2013). Plaintiffs "must prove by a preponderance of the evidence that [D]efendants did not adequately compensate employees as required by the FLSA" and NYLL." *Id.* (citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)).

"Plaintiffs bear the burden of demonstrating the number of hours that they worked." *Tapia v. BLCH 3rd Ave. LLC*, 14 Civ. 8529 (AJN), 2016 WL 4581341, at *5 (S.D.N.Y. Sept. 1, 2016), *aff'd*, 906 F.3d 58 (2d Cir. 2018) (quoting *Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015)); *Perez v. Rossy's Bakery & Coffee Shop, Inc.*, No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *1–2 (S.D.N.Y. Mar. 30, 2021).  However, under the FLSA and the NYLL, an employer is required to maintain records of wages and hours, and if the employer fails to do so, a plaintiff "will not be penalized due to [their] employer's record–keeping default." *Reich*, 121 F.3d at 69 (citation omitted). Where the employer has not maintained records of wages and hours, the plaintiff "need only prove that [they] performed work for which [they were] not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 69 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

"It is well settled among the district courts of this Circuit [] that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d

327, 331 (S.D.N.Y. 2005) (explaining that, in the absence of employer records, employee may carry his burden by submitting "sufficient evidence from which violations of the [FLSA or NYLL] and the amount of an award may be reasonably inferred" (quoting *Reich*, 121 F.3d at 66 (quotation marks omitted)).

Following the plaintiff's testimony, which presumptively establishes the fact of a violation and injury, the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *ACBL Corp.*, 427 F. Supp. at 335 (quoting *Anderson*, 328 U.S. 680, 687-88). If the employer fails to meet this burden, this Court may award damages to the employee, "even though the result is only approximate." *Reich*, 121 F.3d at 69.

"Although a plaintiff's testimony regarding his recollection alone may be sufficient to establish a rebuttable presumption that he worked certain hours for which he was not compensated, such testimony only establishes a presumption if the testimony is credible." *Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *4 (E.D.N.Y. Sept. 30, 2017) (citing *Daniels v. 1710 Realty LLC*, 497 F. App'x 137 (2d Cir. 2012)).[15] It is the role of the trial court in making a finding of fact to determine "how much weight to afford any given witness's testimony, and whether or not witnesses are credible." *Romero*, 2017 WL 4480758, at *4; *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (explaining that, in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited[.]").

---

[15] This burden-shifting framework applies under both the FLSA and the NYLL. *See Romero*, 2017 WL 4480758, at *4; *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017).

**C.**     **Statute of Limitations**

"The statute of limitations under the FLSA is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (quoting 29 U.S.C. § 255(a)).  "For an employer's actions to be willful, the employer must have 'either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Solis*, 938 F. Supp. 2d at 393 (E.D.N.Y. 2013) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "Courts in this Circuit have generally left the question of willfulness to the trier of fact." *Solis*, 938 F. Supp. 2d at 393 (citations omitted).

Defendants' violation of the FLSA and NYLL was knowing and willful.  Defendants flagrantly violated basic recordkeeping and pay requirements despite testifying that they had sufficient knowledge of the labor laws. (Tr. 670:25–670:13 ("I try my best not to have overtime . . . we were aware that every week, if it's over 40 hours of work during the week, it's time and a half pay."); *see also id.* at 846:2–5 (explaining that overtime requires time and a half pay)); *Moon v. Kwon*, 248 F. Supp. 2d 201, 231 (S.D.N.Y. 2002) (finding willful violations where the evidence was "clear that the defendants [ ] flagrantly violated basic recordkeeping requirements").  Thus, for Plaintiffs' FLSA claims, the three-year limitations period applies.  *See Easterly v. Tri–Star Transport Corp.*, No. 11 Civ. 6365 (VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015).

In contrast, the NYLL establishes a six-year limitations period. *See* N.Y. Lab. L. §§ 198(3), 663(3); *Fermin*, 93 F. Supp. 3d at 38.  Therefore, Plaintiffs may recover under the NYLL for claims arising outside of the FLSA's three-year limitations period. *Fermin*, 93 F. Supp. 3d at 38 (citation omitted).

Because the Complaint was filed on February 2, 2017, the state law limitations period includes claims dated from February 2, 2011 to February 2, 2017, while the federal law limitations period includes claims dated from February 2, 2014 to February 2, 2017. Only Shi Ming Chen's employment began prior to the NYLL's six-year limitations period. This Court has not considered any claims related to Shi Ming Chen's employment before February 2, 2011. *Id.*

**D.      Plaintiffs Jixiang Wang and Yong Kang Liu**

Plaintiffs Jixiang Wang and Yong Kang Liu voluntarily procured their own absence at trial. They also failed to notify their counsel promptly before trial that they had left the country. Their claims are therefore dismissed with prejudice pursuant to Fed. R. Civ. P. 32(a)(3)(B) and 41(b).

"The Second Circuit has held that a witness' live in-court testimony is the preferred method of presenting his or her testimony." *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006). "That being said, 'Rule 32 provides limited exceptions to the requirement' that testimony at all trials must be live." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 4 Civ. 10014 (PKL), 2009 WL 3111766, at *19 (S.D.N.Y. Sept. 28, 2009) (cleaned up) (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001)) (citation omitted). Fed. R. Civ. P. 32(a)(4)(B) provides that:

> A party may use for any purpose the deposition of a witness . . . if the court finds: . . . (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition.

Where a plaintiff procures their own absence—e.g., causes themselves to be unavailable for trial—courts may not use their deposition testimony as a substitute for live trial testimony. *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 1904569, at *8 (S.D.N.Y. July 1, 2009) (noting that "Rule 32's provision . . . disqualifies such witnesses when the witness's absence was procured by the party offering the deposition.") (quotation marks omitted);

*see Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1192 (10th Cir. 2004).  It is well-established that a plaintiff who fails to appear at trial, such as by voluntarily leaving the United States, has procured their own absence and may have their claims dismissed with prejudice under Fed. R. Civ. P. 41(b).  *Garcia-Martinez*, 392 F.3d at 1192.

Defendants moved to dismiss Plaintiffs Yong Kang Liu and Jixiang Wang from this action due to their failure to appear at trial.  (Tr. 6:19–7:11; Hunan Defs.' Mem. at 7, Taste of Mao Defs.' Mem. at 6.)  Plaintiffs argued that this Court should utilize Liu and Wang's earlier deposition testimony pursuant to Fed. R. Civ. P. 32(a)(3)(B) because Liu and Wang did not procure their own absence at trial.

Plaintiffs Yong Kang Liu and Jixiang Wang procured their own absence by voluntarily leaving the United States with no plans to return.  Liu voluntarily left the United States and returned to the People's Republic of China ("PRC") in September 2019 due to health issues.  (Decl. of Yong Kang Liu, ("Liu Decl."), ECF No. 309.)  Wang voluntarily left the United States and returned to the PRC in December 2020 due to family circumstances.  (Decl. of Jixiang Wang, ("Wang Decl."), ECF No. 308.)  For a period of more than three years, neither Liu nor Wang informed their attorney that they had left the United States with no plans to return.[16]

During the final pre-trial conference on December 6, 2022, Plaintiffs' attorney repeatedly represented to this Court that he was in contact with all nine plaintiffs, including Liu and Wang, and that all nine plaintiffs would testify at trial.  (ECF No. 317 at 2:18–3:8 (". . . [A]re you in contact with all [nine] of these plaintiffs that you intend to go to trial with? . . . Yes, your Honor . . . All nine? . . . Yes, your Honor.").)

---

[16] On November 19, 2021, Plaintiffs filed their JPTO, which listed Liu and Wang as plaintiffs and trial witnesses.  (JPTO at 7.)

A week before trial, Plaintiffs filed a motion to file documents under seal and, in an ex parte filing, filed a motion for Liu and Wang to testify remotely by videoconference (ECF Nos. 300, 301). This Court rejected Plaintiffs' request to file their motion ex parte and under seal.  (ECF No. 303.)  On February 13, 2023, the first day of trial, Plaintiffs filed an emergency motion to use Liu and Wang's deposition transcripts or, in the alternative, to allow Liu and Wang to testify by videoconference,[17] due to their inability to return to the United States for trial.  (ECF No. 306.) Plaintiffs argued that both Wang and Liu were considered "unavailable" under Fed. R. Evidence 804, because they had been in the United States without legal status for more than one year and thus would be barred from returning to the United States for a period of ten years under 8 U.S.C. § 1182(a)(9)(B)–(C).[18]  Defendants then moved to dismiss Liu and Wang's claims for failure to prosecute.  (See Mem. of Law in Opp., ECF No. 312, at 14–15.)  This Court reserved decision on Defendants' motion and denied Plaintiffs' emergency motion without prejudice for Plaintiffs to renew such a motion when the parties filed their proposed findings of fact and conclusions of law. (See ECF No. 319.)

Liu and Wang procured their own absence at trial by voluntarily leaving the United States in 2019 and 2020, respectively. Both Plaintiffs failed to inform this Court or their attorney that they had permanently left the United States for a period of over three years.  Because Liu and Wang procured their own absence at trial by voluntarily leaving the United States, their deposition

---

[17] Plaintiffs' counsel initially averred that Liu and Wang had secured an "Exit–Entry Permit" to travel to Hong Kong or Macau, and indicated that they could testify via video from Hong Kong or Macau if needed. (See ECF No. 305.)  Counsel later admitted that both Liu and Wang lacked funds to travel to and testify remotely from either location.

[18] Liu and Wang argued that they are barred from returning to the United States for ten years because they remained in the United States for more than one year after their visa expired, constituting an unlawful presence under 8 U.S.C. § 1182(a)(9)(B)–(C).  Wang alleges that he stayed in the United States for over thirteen years past his visa expiration date. (See Wang Decl. at 2.)  Liu alleges that he stayed in the United States for over five years past his visa expiration date. (See Liu Decl. at 2.)

testimony may not be used under Fed. R. Civ. P. 32(a)(4)(B). Yong Kang Liu and Jixiang Wang's claims against Defendants are therefore dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b).

**E. Overtime Wages**

Defendants violated the FLSA and NYLL overtime compensation requirements by failing to pay Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Qifang Chen, and Pingjin Fan overtime wages for hours worked in excess of 40 hours a week.

Subject to certain exemptions, both federal and state law require employers to pay employees at the rate of at least one and one–half times their regular hourly rate for hours worked in excess of 40 per week, and to pay employees for all hours worked. 29 U.S.C. §§ 206(a), 207(a); 12 N.Y.C.R.R. §§ 2.2–2.4. Plaintiffs bear the burden of proving that they performed work for which they were not properly compensated and that the employer had actual or constructive knowledge of that work. *Anderson*, 328 U.S. at 686–87. The plaintiff may satisfy this burden by "producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687.

Employers are obligated to maintain accurate records of the hours that their overtime-eligible employees work. *See* 29 C.F.R. § 516.2(a)(7) ("Every employer shall maintain and preserve payroll or other records containing [,] ... with respect to each employee[,] ... [h]ours worked each workday and total hours worked each workweek"). "Where the employer has failed to keep adequate records of work performed, the solution is not to penalize the employee, but to permit [them] to rely upon 'estimates based on [their] own recollection.'" *Mendez*, 2014 WL 4276418, at \*6 (citing *Kuebel*, 643 F.3d at 362) (citations omitted). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence." *Anderson*, 328 U.S. at 687–88. If the employer fails to meet its burden, then the court may award damages, "even though the result be only approximate." *Id.* at 688.

Defendants assert that Shi Ming Chen was an overtime–exempt managerial employee. This allegation lacks evidentiary support.   It is well-established that FLSA exemptions are to be "construed narrowly against the employer seeking to assert them," and that the employer bears the burden of proving that employees are exempt. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009).  "A job title alone is insufficient to establish the exempt status of an employee. Rather, the exempt or nonexempt status of any particular employee must be determined on the bases of whether the employee's salary and duties meet the requirements of the regulations in this part." *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 532–33 (S.D.N.Y. 2012) (citations, quotation marks, and brackets omitted).

There is no evidentiary support that Chen was an overtime-exempt managerial employee. To the contrary, Defendants' own records state that Chen was overtime-eligible and they provided him with an overtime rate of pay.  While Defendants argue that Chen was more highly paid because he was a managerial employee, "neither title nor a relatively high salary is dispositive of the exemption determination—what matters is what this particular employee's primary duties actually were." *Id.* at 538 (citations omitted).  As the evidence at trial demonstrated, Chen was paid more because he had worked at Defendants' restaurants for years longer than the other Plaintiffs in this action.  He received regular raises in increments of $100 consistent with increases in tenure.

The testimony at trial demonstrated that Chen's work duties were not managerial in nature. Chen was hired as an ingredient sorter and later promoted to a cook.  Defendants have pointed to no business records or credible testimony that support their threadbare contention that Chen was designated or considered a manager.  Instead, Defendants' own records support the opposite

conclusion: Defendants provided Chen with an overtime rate of pay because he was an employee who was overtime eligible.

Without contradiction, Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Qifang Chen, and Pingjin Fan testified that they regularly worked in excess of 40 hours per week. Plaintiffs were not compensated for the additional overtime hours they worked. Accordingly, Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Qifang Chen, and Pingjin Fan are entitled to overtime pay.  Because Xinlong Liu did not demonstrate that he worked over 40 hours per week, he is not entitled to overtime pay.

**F. Minimum Wages**

Defendants violated the FLSA and NYLL's minimum wage provisions.  Plaintiffs Baojun Tian, Xinlong Liu, and Qifang Chen are entitled to minimum wage backpay accordingly.  An employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week. 29 U.S.C. § 206(a); N.Y. Lab. L. § 652(1). New York has an additional minimum wage order applicable to the hospitality industry. *See* 12 N.Y.C.R.R. § 146–1.1(a) ("Every employer in the hospitality industry must pay to each employee . . . at least the minimum wage rates provided in this Part."). Employees bear the initial burden of proving they were not properly compensated for their work.

The minimum wage for large employers in New York during Plaintiffs' employment was $7.25 in 2011, $7.25 in 2012, $7.25 in 2013, $8.00 in 2014, $8.75 in 2015, $9.00 in 2016, and $11.00 in 2017.  The federal minimum wage for these same periods was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). This Court will calculate damages using the New York wage rate because it is higher.  *See* 29 U.S.C. § 218(a) ("No provision of this chapter . . . shall excuse noncompliance with . . . a minimum wage higher than the minimum wage established under this chapter . . . ")

Defendants cannot credit Plaintiffs' tips towards their wages because they failed to provide Plaintiffs with adequate notice as required by law. "Under both state and federal law, employers may credit an employee's tips toward their wage under certain circumstances." *Haifeng Xie v. Sakura Kai I Inc.*, No. 17 Civ. 7509 (ILG) (JO), 2019 WL 1568756, at *3 (E.D.N.Y. Apr. 11, 2019) (citations omitted). However, in order to do so, the employer must provide certain notices concerning the tip credit to the employee. *See* 29 U.S.C. § 203(m); 12 N.Y.C.R.R. §§ 146–1.3; 146–2.2. Specifically, to claim a tip credit for federal purposes, the employer must "inform[ ]" the employee "of the provisions of" 29 U.S.C. § 203(m), the statute that provides for it. 29 U.S.C. § 203(m)(2)(A). To claim a tip credit for New York minimum wage purposes, the employer must, "[p]rior to the start of employment," give the employee written notice of "the amount of tip credit, if any, to be taken from the basic minimum hourly rate." 12 N.Y.C.R.R. § 146–2.2(a); *see id.* § 146–1.3. The defendant has the burden of proving compliance with these requirements. *See Velez v. 111 Atlas Restaurant Corp.*, No. 14 Civ. 6956 (MKB) (CLP), 2016 WL 9307471, at *9 (E.D.N.Y. Aug. 11, 2016). Because Defendants have not met their burden that they complied with any such notice requirements, they may not credit Plaintiffs' tips towards their wages. Plaintiffs Baojun Tian, Xinlong Liu, and Qifang Chen are entitled to minimum wage backpay accordingly.[22]

### G. Wage Statement and Wage Notice Requirements

Plaintiffs are not entitled to wage statement or notice damages because they have not demonstrated an injury-in-fact sufficient to confer standing. The NYLL requires employers to provide employees, at the time of hiring, both in English and in the employee's primary language, a notice with the "rate or rates of pay and basis thereof," and the employer's official name, address,

---

[22] Because Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, and Pingjin Fan were paid salaries above minimum wage, they are not entitled to minimum wage backpay.

and telephone number. N.Y. Lab. L. § 195(1)(a). An employee who does not receive a wage notice within ten business days of their first day of employment may recover $50.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. L. § 198(1–b). The NYLL also requires employers to provide employees wage statements with every payment of wages that list information such as the pay period, names of the employee and employer, the employee's contact information, and the rate and basis for pay. N.Y. Lab. L. § 195(3). An employee who does not receive wage statements with each payment of wages may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. L. § 198(1–d).

Defendants argue that Plaintiffs lack standing to assert these claims because they cannot demonstrate an injury-in-fact. (Hunan Defs.' Mem. at 24–25.) Defendants are correct. While it is undisputed that Defendants did not provide Plaintiffs proper wage notice and statements,[23] Plaintiffs lack standing to maintain these claims. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012); *see also Wang v. XBB, Inc.*, No. 18 Civ. 7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Although the evidence establishes by a preponderance that Defendants failed to provide plaintiff with required notices under the NYLL, Plaintiff lacks standing to recover on those claims."). "Technical statutory violations that do not lead 'to either a tangible injury or something akin to a traditional cause of action' cannot sustain Article III standing in federal court." *Sevilla v. House of Salads One LLC*, No. 20 Civ. 6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct.

---

[23] Defendants failed to provide Plaintiffs wage notices and statements within ten business days of their first day of employment as required by law. When Defendants did provide Plaintiffs' wage notices and statements, typically weeks or months into their employment, those wage notices were both inaccurate and nonstandard: the notices and statements provided inaccurately stated Plaintiffs' rates of pay and failed to include language in both English and Chinese.

2190, 2205 (2021)). Where, as here, Plaintiffs failed to demonstrate that they "even read the wage statements or relied on them in any way, or that the wage statements caused Plaintiffs confusion or distress[,]" *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 340 (S.D.N.Y. 2022), Plaintiffs have not shown an injury-in-fact sufficient to confer standing. Nor have Plaintiffs established that they suffered "downstream consequences" constituting a concrete harm to confer standing. *See id.* at 340–41 (citing *TransUnion*, 141 S. Ct. at 2203). Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' claims for violations of N.Y. Lab. L. § 195(1)(a) and § 195(3) and dismisses those claims for lack of standing.

## H. Spread of Hours Pay

Defendants are not liable for unpaid spread of hours pay under New York law because Plaintiffs have not demonstrated that their workday spanned longer than 10 hours per day.

New York law requires,[24] separate from any unpaid minimum wage or overtime award, that "an employee whose workday is longer than ten hours must receive one hour's pay at the basic minimum hourly wage rate." *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 319 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting N.Y.C.C.R.R. Tit. 12, § 142–2.4; and *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008)).[25]

An employee is entitled to spread of hours pay only if they are paid the minimum wage. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 658 (E.D.N.Y. 2020). "[R]ecent case law

---

[24] The spread of hours regulation applies to employers that are "restaurants." N.Y.C.R.R. § 146–1.6. A restaurant is "any eating or drinking place that prepares and offers food or beverage for human consumption . . . ." 12 N.Y.C.R.R. § 146–3.1(b). Defendants' business are restaurants located in Manhattan and Queens. Accordingly, they are subject to New York's spread of hours regulation.

[25] "This time is measured as 'the interval between the beginning and end of an employee's workday.'" *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 555–56 (S.D.N.Y. 2017) (quoting N.Y.C.R.R. Tit. 12, § 142–2.18); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 531 (S.D.N.Y. 2013). "Thus, breaks, lunch periods, split shifts, and other non-working time on premises count as part of the workday for this provision's requirements." *Salustio*, 264 F. Supp. 3d at 556 (citation and quotation marks omitted).

has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum-wage level." *Williams v. Tri-State Biodiesel, LLC.*, No. 13 Civ. 5041, 2015 WL 305362, at *16 (S.D.N.Y. Jan. 23, 2015); *Ying Ying Dai*, 490 F. Supp. 3d at 658 (same). Thus, only Plaintiffs Baojun Tian, Xinlong Liu, and Qifang Chen would be eligible to receive spread of hours pay, because all other Plaintiffs were paid above minimum wage.

Baojun Tian, Xinlong Liu, and Qifang Chen have not met their burden of demonstrating that their workdays spanned more than ten hours a day. Instead, the evidence established at trial demonstrated that Baojun Tian, Xinlong Liu, and Qifang Chen's hours were at or around 9 to 10 hours per day, four to six days per week. The regular business hours of Defendants' restaurants further indicate that Chen, Liu, and Tian worked when the business was open, during regular business hours, for a total of 9 to 10 hours per day. Plaintiffs have therefore not met their burden of demonstrating by a preponderance of the evidence that their hours *exceeded* 10 hours per workday as required under New York Law. Because Plaintiffs have not demonstrated that they worked in excess of 10 hours per day as required by New York law, they are not entitled to spread of hours pay.

## I.  Damages

### i.  Shi Ming Chen's Overtime

Plaintiff Shi Ming Chen was paid a weekly rate of $750 from approximately February 2, 2011 to August 15, 2011. This results in a presumptive hourly rate of $18.75, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $28.12 per hour for the 20 overtime hours he worked each week. He worked 28 weeks at this regulate rate of pay, entitling him to an additional **$15,747.20** (20 hours x 28 weeks x $28.12 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $825 from August 16, 2011 to December 31, 2011. This results in a presumptive hourly rate of $20.63, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $30.94 per hour for the 20 overtime hours he worked each week. He worked 20 weeks at this regular rate of pay, entitling him to an additional **$12,376.00** (20 hours x 20 weeks x $30.94 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $850 from January 1, 2012 to December 31, 2012. This results in a presumptive hourly rate of $21.25, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $31.88 per hour for the 20 overtime hours he worked each week. He worked 52 weeks at this regular rate of pay, entitling him to an additional **$33,155.20** (20 hours x 52 weeks x $31.88 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $875 from January 1, 2013 to August 9, 2014. This results in a presumptive hourly rate of $21.88, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $32.81 per hour for the 20 overtime hours he worked each week. He worked 84 weeks at this regular rate of pay, entitling him to an additional **$55,120.80** (20 hours x 84 weeks x $32.81 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $900 from August 10, 2014 to March 7, 2015. This results in a presumptive hourly rate of $22.50, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $33.75 per hour for the 20 overtime hours he worked each week. He worked 30 weeks at this regular rate of pay, entitling him to an additional **$20,250.00** (20 hours x 30 weeks x $33.75 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $925 from March 8, 2015 to September 6, 2015. This results in a presumptive hourly rate of $23.13, calculated by dividing this weekly rate by 40 (hours). He thus should have been paid $34.69 per hour for the 20 overtime hours he worked each

week.   He worked 26 weeks at this regular rate of pay, entitling him to an additional **$18,038.80** (20 hours x 26 weeks x $34.69 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $950 from September 7, 2015 to February 21, 2016. This results in a presumptive hourly rate of $23.75, calculated by dividing this weekly rate by 40 (hours).  He thus should have been paid $35.63 per hour for the 20 overtime hours he worked each week.   He worked 24 weeks at this regular rate of pay, entitling him to an additional **$17,102.40** (20 hours x 24 weeks x $35.63 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $975 from March 4, 2016 to May 19, 2016. This results in a presumptive hourly rate of $24.38, calculated by dividing this weekly rate by 40 (hours).  He thus should have been paid $36.56 per hour for the 20 overtime hours he worked each week.   He worked 11 weeks at this regular rate of pay, entitling him to an additional **$8,043.20** (20 hours x 11 weeks x $36.56 hourly wage) in overtime pay.

Shi Ming Chen was paid a weekly rate of $1,000 from May 20, 2016 to September 8, 2016. This results in a presumptive hourly rate of $25.00, calculated by dividing this weekly rate by 40 (hours).  He thus should have been paid $37.50 per hour for the 20 overtime hours he worked each week.   He worked 16 weeks at this regular rate of pay, entitling him to an additional **$12,000.00** (20 hours x 16 weeks x $37.50 hourly wage) in overtime pay.

Shi Ming Chen is thus owed **$191,833.60** in overtime pay, plus all applicable interest.

**ii.   Lianhe Zhou's Overtime**

Lianhe Zhou was paid a weekly rate of $850 from June 15, 2014 to September 20, 2014. This results in a presumptive hourly rate of $21.25, calculated by dividing this weekly rate by 40 (hours).  Zhou thus should have been paid $31.88 per hour for the 20 overtime hours he worked

each week.   Zhou worked 14 weeks at this regular rate of pay, entitling him to an additional **$8,926.40** (20 hours x 14 weeks x $31.88 hourly wage) in overtime pay.

Zhou was paid a weekly rate of $875 from March 18, 2016, to June 12, 2016. This results in a presumptive hourly rate of $21.88, calculated by dividing this weekly rate by 40 (hours).  Zhou thus should have been paid $32.81 per hour for the 20 overtime hours he worked each week.  Zhou worked 12 weeks at this regular rate of pay, entitling him to an additional **$7,874.40** (20 hours x 12 weeks x $32.81 hourly wage) in overtime pay.

Lianhe Zhou is thus owed **$16,800.80** in overtime pay, plus all applicable interest.

### iii.  **Wei Min Zhu's Overtime**

Wei Min Zhu was paid a weekly rate of $600 from March 1, 2015, to November 15, 2015, and from November 30, 2015 to July 31, 2016. This results in a presumptive hourly rate of $15.00, calculated by dividing this weekly rate by 40 (hours).  Zhu thus should have been paid $22.50 per hour for the 20 overtime hours he worked each week.   Zhu worked 72 weeks at this regular rate of pay, entitling him to an additional **$32,400.00** (20 hours x 72 weeks x $22.50 hourly wage) in overtime pay.

Zhu was paid a weekly rate of $572.50 during a two-week period between November 16, 2015 and November 29, 2015. This results in a presumptive hourly rate of $14.31, calculated by dividing this weekly rate by 40 (hours).  Zhu thus should have been paid $21.47 per hour for the 20 overtime hours he worked each week. Zhu worked 2 weeks at this regular rate of pay, entitling him to an additional **$858.80** (20 hours x 2 weeks x $21.47 hourly wage) in overtime pay.

Wei Min Zhu is thus owed **$33,258.80** in overtime pay, plus all applicable interest.

iv.    **Baojun Tian's Overtime and Minimum Wage Backpay**

Baojun Tian was paid a weekly rate of $250 from May 16, 2015 to on or about August 30, 2015. This results in a presumptive hourly rate of $6.25, calculated by dividing this weekly rate by 40 (hours). Tian worked approximately 50 hours per week. A lawful paycheck including both minimum wage and overtime would have amounted to $481.25, because minimum wage was $8.75 and minimum overtime was $13.13 in 2015. N.Y. Lab. L. 652(1)(a)(ii).  Tian is owed the difference between his actual pay received and his lawful pay, ($231.25 x 15 weeks), totaling **$3,468.75** in minimum wage backpay and overtime pay.

Baojun Tian is thus owed **$3,468.75** in minimum wage backpay and overtime pay, plus all applicable interest.

v.    **Xinlong Liu's Minimum Wage Backpay**

Plaintiff Xinlong Liu was paid an hourly rate of $7.50 from on or about September 7, 2015, to on or about April 9, 2017. Throughout the course of his employment, Liu worked approximately 4 days per week and 9.5 hours per day, amounting to approximately 38 hours per week. His paycheck was approximately $285 per week. A lawful paycheck including minimum wage would have amounted to $332.50 in 2015, $342 in 2016, and $418 in 2017, because minimum wage was $8.75 in 2015, $9.00 in 2016, and $11.00 in 2017.  N.Y .Lab.L. 652(1)(a)(ii).  Liu is owed the difference between his actual pay received and his lawful pay, ($47.50 x 17 weeks) + ($57 x 52 weeks) + ($133 x 14 weeks), totaling **$5,633.50** in minimum wage backpay.

Xinlong Liu is thus owed **$5,633.50** in minimum wage backpay, plus all applicable interest.

vi.    **Qifang Chen's Overtime and Minimum Wage Backpay**

Plaintiff Qifang Chen was paid an hourly rate of $7.50 per hour from July 27, 2014 to on or about October 30, 2016.  Throughout the course of her employment, she worked approximately

4.5 days per week and 10 hours per day, amounting to approximately 45 hours per week and a weekly paycheck of $300. A lawful paycheck including both minimum wage and overtime would have amounted to $380.00 in 2014, $415.65 in 2015, and $427.50 in 2016, because minimum wage was $8.00 in 2014, $8.75 in 2015, and $9.00 in 2016. N.Y. Lab. L. 652(1)(a)(ii). Minimum overtime was $12 in 2014, $13.13 in 2015, and $13.50 in 2016. She is owed the difference between her actual pay received and her lawful pay, $1,680 for 2014 ($80 x 21 weeks) + $4,279.05 for 2015 ($115.65 x 37 weeks) + $3,570.00 for 2016 ($127.50 x 28 weeks), totaling **$9,529.05** in minimum wage backpay and overtime pay.

Qifang Chen is thus owed **$9,529.05** in minimum wage backpay and overtime pay, plus all applicable interest.

**vii.    Pingjin Fan's Overtime**

Pingjin Fan was paid a weekly rate of $600 from approximately March 1, 2015 to May 15, 2015. This results in a presumptive hourly rate of $15, calculated by dividing this weekly rate by 40 (hours). Fan thus should have been paid $22.50 per hour for the 20 overtime hours he worked each week. Fan worked 11 weeks at this regulate rate of pay, entitling him to an additional **$4,950.00** (20 hours x 11 weeks x $22.50 hourly wage) in overtime pay.

Fan was paid a weekly rate of $625 from May 16, 2015 to July 31, 2015. This results in a presumptive hourly rate of $15.63, calculated by dividing this weekly rate by 40 (hours). Fan thus should have been paid $23.44 per hour for the 20 overtime hours he worked each week. Fan worked 11 weeks at this regular rate of pay, entitling him to an additional **$5,156.80** (20 hours x 11 weeks x $23.44 hourly wage) in overtime pay.

Fan was paid a weekly rate of $650 from August 1, 2015 to October 15, 2015. This results in a presumptive hourly rate of $16.25, calculated by dividing this weekly rate by 40

(hours).  Fan thus should have been paid $24.38 per hour for the 20 overtime hours he worked each week.  Fan worked 11 weeks at this regular rate of pay, entitling him to an additional **$5,362.60** (20 hours x 11 weeks x $24.38 hourly wage) in overtime pay.

Fan was paid a weekly rate of $675 from October 16, 2015 to December 31, 2015.  This results in a presumptive hourly rate of $16.88, calculated by dividing this weekly rate by 40 (hours).  Fan thus should have been paid $25.31 per hour for the 20 overtime hours he worked each week.  Fan worked 11 weeks at this regular rate of pay, entitling him to an additional **$5,568.20** (20 hours x 11 weeks x $25.31 hourly wage) in overtime pay.

Fan was paid a weekly rate of $700 from January 1, 2016 to February 28, 2016.  This results in a presumptive hourly rate of $17.50, calculated by dividing this weekly rate by 40 (hours).  Fan thus should have been paid $26.25 per hour for the 20 overtime hours he worked each week.  Fan worked 8 weeks at this regular rate of pay, entitling him to an additional **$4,200.00** (20 hours x 8 weeks x $26.25 hourly wage) in overtime pay.

Fan was paid a weekly rate of $725 from November 12, 2016 to December 31, 2016.  This results in a presumptive hourly rate of $18.13, calculated by dividing this weekly rate by 40 (hours).  Fan thus should have been paid $27.19 per hour for the 20 overtime hours he worked each week.  Fan worked 7 weeks at this regular rate of pay, entitling him to an additional **$3,806.60** (20 hours x 7 weeks x $27.19 hourly wage) in overtime pay.

Fan was paid a weekly rate of $750 from January 1, 2017 to February 15, 2017.  This results in a presumptive hourly rate of $18.75, calculated by dividing this weekly rate by 40 (hours).  Fan thus should have been paid $28.13 per hour for the 14 overtime hours he worked each week.  Fan worked 7 weeks at this regular rate of pay, entitling him to an additional **$2,756.74** (14 hours x 7 weeks x $28.13 hourly wage) in overtime pay.

Fan was paid a weekly rate of $775 from February 16, 2017 to November 12, 2017. This results in a presumptive hourly rate of $19.38, calculated by dividing this weekly rate by 40 (hours). Fan thus should have been paid $29.06 per hour for the 14 overtime hours he worked each week. Fan worked 39 weeks at this regular rate of pay, entitling him to an additional **$15,868.13** (14 hours x 39 weeks x $29.06 hourly wage) in overtime pay.

Pingjin Fan is thus owed **$47,668.70** in overtime pay, plus all applicable interest.

### J. Liquidated Damages

Plaintiffs are entitled to recover either state-law or federal liquidated damages for their minimum wage and overtime claims. "Under both the FLSA and NYLL, plaintiffs are entitled to liquidated damages if they have been denied appropriate minimum wages or overtime." *Elghourab v. Vista JFK, LLC*, 818 F. App'x 63, 66 (2d Cir. 2020) (citations omitted).

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum wages or overtime may recover, in addition to reimbursement of unpaid wages, an amount equal to the unpaid wages (100%) unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA." *Galeana*, 120 F. Supp. 3d at 317 (citing 29 U.S.C. § 260). As the Second Circuit has observed, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness . . . double damages are the norm, single damages the exception." *Reich*, 121 F.3d at 71 (quotations omitted). A "defendant's failure to point to any evidence sufficient to make such a showing [of good faith] may warrant awarding [liquidated] damages at the summary judgment stage." *Nunez v. Broadway Beauty Wholesale Inc.*, No. 19 Civ. 362 (JPO), 2020 WL 6063536, at *4 (S.D.N.Y. Oct. 14, 2020) (quotations omitted).

Defendants have failed to present any evidence that they were unaware of their obligations under the law or took "active steps to ascertain the dictates of and comply with federal or state labor law." *Id.* at *5. Defendants have also failed to produce any evidence that they acted in good faith. Plaintiffs are entitled to liquidated damages on their minimum wage and overtime claims, and may recover under either the FLSA or NYLL, whichever provides for a greater recovery. *See Morales v. Mw Bronx, Inc.*, No. 15 Civ. 6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Because the NYLL provides Plaintiffs greater recovery in this case, this Court calculates liquidated damages under the NYLL.

Plaintiffs' damages, including liquidated damages and excluding all applicable interest, are as follows:

| Plaintiff | Overtime | Minimum Wages | Spread of Hours | Wage Notice | Liquidated Damages | Total (*excl. all applicable interest*) |
|---|---|---|---|---|---|---|
| Shi Ming Chen | $191,833.60 | 0 | 0 | 0 | $191,833.60 | **$383,667.20** |
| Lianhe Zhou | $16,800.80 | 0 | 0 | 0 | $16,800.80 | **$33,601.60** |
| Wei Min Zhu | $33,258.80 | 0 | 0 | 0 | $33,258.80 | **$66,517.60** |
| Baojun Tian | $2,268.75 | $1,200.00 | 0 | 0 | $3,468.75 | **$6,937.50** |
| Xinlong Liu | 0 | $5,633.50 | 0 | 0 | $5,633.50 | **$11,267.00** |
| Qifang Chen | $5,579.50 | $3,950.00 | 0 | 0 | $9,529.50 | **$19,058.10** |
| Pingjin Fan | $47,668.70 | 0 | 0 | 0 | $47,668.13 | **$95,337.40** |
| | | | | | | **$616,386.40** |

## K. Prejudgment Interest

Under New York law, prejudgment interest—in addition to liquidated damages—may be awarded on a plaintiff's unpaid wages. N.Y. Lab. L. § 198(1–a). "'Courts applying the NYLL in wage-and-hour cases often choose the midpoint of the plaintiff's employment' in computing prejudgment interest." *Sakura*, 2019 WL 1568756, at *11; *see* N.Y. C.P.L.R. 5001(b). The prejudgment interest rate is 9% per annum. N.Y. C.P.L.R. 5004. *Miyama*, 2019 WL 4279407, at *11.

Plaintiff Shi Ming Chen worked from February 2, 2011 to September 8, 2016, so this Court selects the midpoint date of November 20, 2013, from which to calculate prejudgment interest. Thus, this Court awards Shi Ming Chen prejudgment interest on his total actual damages from November 20, 2013, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Lianhe Zhou worked from June 15, 2014 to June 12, 2016, so this Court selects the midpoint date June 14, 2015, from which to calculate prejudgment interest. Thus, this Court awards Lianhe Zhou prejudgment interest on his total actual damages from June 14, 2015, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Weimin Zhu worked from March 1, 2015 until July 31, 2016, so this Court selects the midpoint date November 14, 2015, from which to calculate prejudgment interest. Thus, this Court awards Weimin Zhu prejudgment interest on his total actual damages from November 14, 2015, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Baojun Tian worked from May 16, 2015, until August 30, 2015, so this Court selects the midpoint date July 8, 2015, from which to calculate prejudgment interest. Thus, this Court awards Baojun Tian prejudgment interest on his total actual damages from July 8, 2015, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Pingjin Fan worked from March 1, 2015, until November 12, 2017, so this Court selects the midpoint date July 6, 2016, from which to calculate prejudgment interest. Thus, this Court awards Pingjin Fan prejudgment interest on his total actual damages from July 6, 2016, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Xinlong Liu worked from September 7, 2015, until April 9, 2017, so this Court selects the midpoint date June 23, 2016, from which to calculate prejudgment interest. Thus, this

Court awards Xinlong Liu prejudgment interest on his total actual damages from June 23, 2016, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff Qifang Chen worked from July 27, 2014, until October 30, 2016, so this Court selects the midpoint date September 13, 2015, from which to calculate prejudgment interest. Thus, this Court awards Qifang Chen prejudgment interest on her total actual damages from September 13, 2015, at the rate of nine percent per year, until the date of entry of judgment.

### L. Post-Judgment Interest

"Post-judgment interest is mandatory on awards in civil cases." *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008)). Therefore, Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan are awarded post-judgment interest calculated pursuant to 28 U.S.C. § 1961.

### M. Attorney's Fees, Costs, and Expenses

The FLSA provides that the "court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, Plaintiffs are entitled to an award of attorney's fees and costs under the FLSA. However, Plaintiffs did not submit their costs. Thus, an additional submission on this issue will be required. *See Solis*, 938 F. Supp. 2d at 405. Plaintiffs shall file an application for attorney's fees within fourteen (14) days of the date of entry of judgment. Defendants' opposition shall be filed within fourteen (14) days thereafter. Plaintiffs' reply, if any, shall be filed within seven (7) days after the filing of Defendants' opposition.[26]

---

[26] Plaintiffs' application for attorney's fees and costs will then be referred to Magistrate Judge Gorenstein.

## V. CONCLUSION

Plaintiffs Jixiang Wang and Yong Kang Liu's claims are dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b).

Defendants are jointly and severally liable to Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan for a total of **$616,386.40**, plus all applicable interest.

Dated:  August 29, 2023
        New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE