**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------ x

SHI MING CHEN, LIANHE ZHOU, YONG
KANG LIU, JIXIANG WANG, WEI MIN ZHU,
BAOJUN TIAN, XINLONG LIU, QIFANG CHEN,
and PINGJIN FAN,

                  Plaintiffs,

  –against–

HUNAN MANOR ENTERPRISE, INC., D/B/A
HUNAN MANOR, HUNAN MANOR LLC, D/B/A
HUNAN MANOR, HUNAN HOUSE MANOR
INC., D/B/A HUNAN MANOR, HUNAN HOUSE
RESTAURANT, INC., D/B/A HUNAN MANOR,
HUNAN HOUSE RESTAURANT NY LLC, D/B/A
HUNAN MANOR, HUNAN HOUSE, INC., D/B/A
HUNAN MANOR, A TASTE OF MAO, INC.,
D/B/A CHINA XIANG, JINGCHAO LI, A/K/A
JING CHAO LI, A/K/A DIANA LI, ZHIDA LI,
A/K/A ZHI DA LI, A/K/A ALAN LI, and ZHENQI
XIAO, A/K/A NANCY XIAO,

                  Defendants.

------------------------------ x

MEMORANDUM DECISION
AND ORDER

17 Civ. 802 (GBD) (GWG)

GEORGE B. DANIELS, District Judge:

    Plaintiffs Shi Ming Chen, Lianhe Zhou, Yong Kang Liu, Jixiang Wang, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan (collectively "Plaintiffs") brought this action against Defendants Hunan Manor Enterprise, Inc., Hunan Manor LLC, Hunan House Manor Inc., Hunan House Restaurant, Inc., Hunan House Restaurant NY LLC, Hunan House, Inc., A Taste of Mao, Inc., Jingchao Li, Zhida Li, and Zhenqi Xiao (collectively "Defendants"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. L. § 650 *et seq.* (First Am. Compl. ("FAC"), ECF No. 182, ¶ 1.) Plaintiffs allege that during their employment at Defendants' restaurants, Defendants failed to pay Plaintiffs minimum wages, overtime wages, and spread

1

of hours pay under the FLSA and NYLL and failed to provide wage statements, wage notice, and pay stubs under the NYLL. (*Id.* ¶¶ 1–5.)

Between February 13 and March 13, 2023, this Court held a bench trial to adjudicate Plaintiffs' claims against Defendants. (*See* Transcript of Bench Trial ("Tr."), ECF Nos. 320, 322, 324, 326, 328, 330, 332.) Following post-trial briefing, this Court issued an opinion, which constituted the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, finding Defendants liable to Plaintiffs on some of Plaintiffs' claims. (Mem. Decision and Ord. ("Opinion"), ECF No. 351.)

Before this Court are three motions for reconsideration of this Court's Opinion: one filed by Plaintiffs ("Plaintiffs' Motion"), one filed by Defendants Hunan Manor Enterprise, Inc., Hunan Manor LLC, Hunan House Manor Inc., Hunan House Restaurant, Inc., Hunan House Restaurant NY LLC, Hunan House, Inc., Zhida Li, and Jingchao Li ("Hunan Manor Defendants' Motion"), and one filed by Defendants A Taste of Mao, Inc. and Zhenqi Xiao ("Taste of Mao Defendants' Motion"). (ECF Nos. 352–53, 364–71.) Plaintiffs' Motion is GRANTED. Hunan Manor Defendants' Motion is GRANTED IN PART as to its request to amend the damages calculation and DENIED as to its other requests. Taste of Mao Defendants' Motion is DENIED.

## I. BACKGROUND

At the bench trial, Plaintiffs appeared and testified, except for Yong Kang Liu and Jixiang Wang, who failed to appear. All three individual Defendants appeared and testified at trial. Plaintiffs and Defendants subsequently filed proposed findings of fact and conclusions of law. (ECF Nos. 336, 343–45, 349, 350.) On August 29, 2023, this Court issued its Opinion, finding as follows:

i. Plaintiffs Yong Kang Liu and Jixiang Wang's claims are dismissed with prejudice under Fed. R. Civ. P. 41(b) due to Liu and Wang's failure to appear at trial.

ii. Defendants' restaurants were a single integrated enterprise and Defendants are therefore jointly and severally liable to Plaintiffs.

iii. Defendants are liable to certain Plaintiffs for violating the overtime and minimum wage provisions of the FLSA and NYLL.

iv. Defendants are not liable to Plaintiffs for spread of hours pay.

v. Plaintiffs do not have standing to recover damages against Defendants for Defendants' violations of the NYLL's wage notice and wage statement provisions.

vi. Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, Baojun Tian, Xinlong Liu, Qifang Chen, and Pingjin Fan are awarded a total of **$616,386.40**, plus all applicable interest.

(Opinion at 2.)

## II. LEGAL STANDARD

The standards governing motions for reconsideration under Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) "are identical." *See R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 508–09 (S.D.N.Y. 2009). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (citation and internal quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such narrow grounds justifying reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and internal quotation marks omitted).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (citations omitted); *see also Weiss v. El A. Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 358

(S.D.N.Y. 2006) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue."). Furthermore, arguments "raised for the first time on a motion for reconsideration are [] untimely." *Cruz v. Barnhart*, No. 04 CIV. 9794 (DLC), 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.*, 265 F.3d 97, 115–16 (2d Cir. 2001)).

### III.   PLAINTIFFS' MOTION FOR RECONSIDERATION IS GRANTED

Plaintiffs move this Court to reconsider that part of its finding that Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, and Pingjin Fan are not eligible for spread of hours pay because they earned above minimum wage. (Pls.' Mem. L. Supp. ("Plaintiffs' Brief"), ECF No. 353, at 1.) Plaintiffs correctly state that while spread of hours pay is limited to minimum wage workers under the Minimum Wage Order for Miscellaneous Industries and Occupations, restaurant and all-year hotel workers are entitled to spread of hours pay under the Hospitality Industry Wage Order "regardless of a given employee's regular rate of pay." *See* Plaintiffs' Brief at 2; 12 N.Y.C.R.R. § 142-2.4; 12 N.Y.C.R.R. § 146-1.6; *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 CIV. 5041 (GWG), 2015 WL 305362, at *17 (S.D.N.Y. Jan. 23, 2015). Because Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, and Pingjin Fan were restaurant employees, they are each entitled to spread of hours pay under the Hospitality Industry Wage Order for each day on which their spread of hours exceeded ten. *See* 12 N.Y.C.R.R. § 146-1.6(a).

An employee's spread of hours refers to the "interval between the beginning and end of an employee's workday," including breaks. *See id.* § 146-1.6. An employee is entitled to an additional hour of minimum wage pay for "each day on which the spread of hours exceeds 10." *Id.* § 146-1.6(a). Plaintiffs cite to trial testimony from Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, and Pingjin Fan in which each testified to working a spread greater than ten hours at various times during their employment with Defendants. (Plaintiffs' Brief at 4–7.) Taste of Mao Defendants claim in their opposition to Plaintiffs' Motion that "plaintiffs' proofs at trial utterly fail to prove spread of hours liability," but Taste of Mao

4

Defendants do not point to any evidence to counter Plaintiffs' testimony. (Taste of Mao Defs.' Am. Mem. L. Supp. ("Taste of Mao Defendants' Brief"), ECF No. 374, at 19.) Hunan Manor Defendants provide no opposition to Plaintiffs' Motion. As a result, this Court relies on Plaintiffs' trial testimony, which this Court found to be credible, to calculate spread of hours damages for Plaintiffs Shi Ming Chen, Lianhe Zhou, Wei Min Zhu, and Pingjin Fan. (*See* Opinion at 9.)

## A. Shi Ming Chen

Plaintiff Shi Ming Chen worked for Defendants as an ingredient sorter and later as a cook. (Opinion at 6.) From February 2, 2011, through August 15, 2011, Plaintiff Shi Ming Chen worked at Hunan House Restaurant six days per week, arriving around 11 a.m. and leaving around 10:40 or 10:50 p.m. (*See* Tr. 235:9–19; Tr. 367:7–13; Plaintiffs' Brief at 4.) Therefore, Plaintiff Shi Ming Chen worked a spread of hours greater than ten hours for six days per week during this 27.86-week period when the minimum wage rate was $7.25 per hour,[1] entitling him to **$1,211.91** in spread of hours pay.

From August 16, 2011, through March 30, 2014, Plaintiff Shi Ming Chen worked at Hunan House Manor six days per week, arriving around 11 a.m. and leaving around 10 p.m. (*See* Tr. 245:19–22; Plaintiffs' Brief at 4.) Therefore, Plaintiff Shi Ming Chen worked a spread of hours greater than ten hours for six days per week during this period in which the minimum wage rate was $7.25 per hour for 124.00 weeks and $8.00 per hour for 12.86 weeks, entitling him to **$6,011.28** in spread of hours pay.

From May 29, 2014, through February 21, 2016, Plaintiff Shi Ming Chen worked at Hunan House six days per week, arriving around 11 a.m. and leaving around 10 p.m. (*See* Tr. 269:12–19; Plaintiffs' Brief at 5.) Therefore, Plaintiff Shi Ming Chen worked a spread of hours greater than ten hours for six days per week during this period in which the minimum wage rate was $8.00 per hour for 30.86 weeks, $8.75 per hour for 52.14 weeks, and $9.00 per hour for 7.57 weeks, entitling him to **$4,627.41** in spread of hours pay.

---

[1] This Court uses the minimum wage rates listed in its Opinion. (*See* Opinion at 24.)

From March 4, 2016, through September 8, 2016, Plaintiff Shi Ming Chen worked at China Xiang six days per week, arriving around 12 p.m. and leaving around 11 p.m. (*See* Tr. 281:18–22; Plaintiffs' Brief at 5.) Therefore, Plaintiff Shi Ming Chen worked a spread of hours greater than ten for six days per week during this 27.00-week period when the minimum wage rate was $9.00 per hour, entitling him to **$1,458.00** in spread of hours pay.

In total, Plaintiff Shi Ming Chen is entitled to **$13,308.60** in spread of hours pay and an equal amount in liquidated damages, plus all applicable interest. *See* N.Y. Lab. L. § 663; Opinion at 36–38.

## B. Lianhe Zhou

Plaintiff Lianhe Zhou worked for Defendants as a sauté cook. (Opinion at 6.) From June 15, 2014, through September 20, 2014, Plaintiff Lianhe Zhou worked at Hunan House six days per week, arriving around 11 a.m. and leaving around 10 p.m. (*See* Tr. 41:12–19; Plaintiffs' Brief at 5.) Therefore, Plaintiff Lianhe Zhou worked a spread of hours greater than ten hours for six days per week during this 14.00-week period when the minimum wage rate was $8.00 per hour, entitling him to **$672.00** in spread of hours pay.

From March 18, 2016, through June 12, 2016, Plaintiff Lianhe Zhou worked at Hunan House Restaurant six days per week, arriving around 11 a.m. and leaving around 10:30 p.m. (*See* Tr. 95:5–11; Plaintiffs' Brief at 6.) Therefore, Plaintiff Lianhe Zhou worked a spread of hours greater than ten hours for six days per week during this 12.43-week period when the minimum wage rate was $9.00 per hour, entitling him to **$671.22** in spread of hours pay.

In total, Plaintiff Lianhe Zhou is entitled to **$1,343.22** in spread of hours pay and an equal amount in liquidated damages, plus all applicable interest. *See* N.Y. Lab. L. § 663; Opinion at 36–38.

## C. Wei Min Zhu

From March 1, 2015, through July 31, 2016, Plaintiff Wei Min Zhu worked for Defendants as a vegetable chopper and food preparer six days per week, arriving around 11 a.m. and leaving around 10 p.m.

(*See* Opinion at 7; Tr. 488:19–21.) Therefore, Plaintiff Wei Min Zhu worked a spread of hours greater than ten hours for six days per week during this period in which the minimum wage rate was $8.75 per hour for 43.57 weeks and $9.00 per hour for 30.57 weeks, entitling him to **$3,938.21** in spread of hours pay.

In total, Plaintiff Wei Min Zhu is entitled to **$3,938.21** in spread of hours pay and an equal amount in liquidated damages, plus all applicable interest. *See* N.Y. Lab. L. § 663; Opinion at 36–38.

### D. Pingjin Fan

Plaintiff Pingjin Fan worked for Defendants as an ingredient preparer and cook. (Opinion at 8.) From March 1, 2015, through February 28, 2016, Plaintiff Pingjin Fan worked at Hunan House six days per week, arriving around 11 a.m. and leaving around 10 p.m. (*See* Tr. 109:3–12; Tr. 135:17–136:6.) Therefore, Plaintiff Pingjin Fan worked a spread of hours greater than ten hours for six days per week during this period in which the minimum wage rate was $8.75 per hour for 43.57 weeks and $9.00 per hour for 8.57 weeks, entitling him to **$2,750.21** in spread of hours pay.

From November 12, 2016, through November 12, 2017, Plaintiff Pingjin Fan worked at China Xiang six days per week, arriving around 11:30 a.m. and leaving around 10:30 p.m. (*See* Tr. 114:6–115:19.) Therefore, Plaintiff Pingjin Fan worked a spread of hours greater than ten hours for six days per week during this period in which the minimum wage rate was $9.00 per hour for 7.00 weeks and $11.00 per hour for 45.29 weeks, entitling him to **$3,367.14** in spread of hours pay.

In total, Plaintiff Pingjin Fan is entitled to **$6,117.35** in spread of hours pay and an equal amount in liquidated damages, plus all applicable interest. *See* N.Y. Lab. L. § 663; Opinion at 36–38.

### IV. DEFENDANTS' REQUEST THAT THIS COURT RECONSIDER PLAINTIFF SHI MING CHEN'S OVERTIME ELIGIBILITY IS DENIED

Both Hunan Manor Defendants' Motion and Taste of Mao Defendants' Motion ask this Court to reconsider its finding that Plaintiff Shi Ming Chen was not an overtime-exempt managerial employee. (Hunan Manor Defs.' Mem. L. Supp. ("Hunan Manor Defendants' Brief"), ECF No. 366, at 18–21; Taste

of Mao Defendants' Brief at 10–16.) This Court addressed the issue of Chen's eligibility for overtime at length in its Opinion and concluded that Defendants did not meet their burden of proving that Chen was an exempt managerial employee. (Opinion at 23–24.) In reaching its conclusion, this Court considered Chen's salary, his employment duties, and Defendants' own records that listed Chen as an overtime-eligible employee. (*Id.*) Defendants do not provide "controlling decisions or data that the court overlooked…" *Shrader*, 70 F.3d at 257. Rather, Defendants seek to relitigate the issue of Chen's overtime eligibility, rehashing arguments and evidence that this Court already considered. As a result, Defendants' request that this Court reconsider Chen's overtime eligibility is denied.

## V. HUNAN MANOR DEFENDANTS' MOTION FOR RECONSIDERATION IS GRANTED IN PART AS TO ITS REQUEST TO AMEND THE DAMAGES CALCULATION AND DENIED AS TO ITS OTHER REQUESTS

### A. Hunan Manor Defendants' Request to Amend Liability of Defendants Hunan Manor Enterprise, Inc., Zhida Li, and Jingchao Li Is Denied

Hunan Manor Defendants ask this Court to reconsider its finding that Defendant Hunan Manor Enterprise, Inc., Defendant Zhida Li, and Defendant Jingchao Li are jointly and severally liable to Plaintiffs. (Hunan Manor Defendants' Brief at 5–6, 13–18.) Based on the evidence at trial, this Court found that Defendants' restaurants operated as a single integrated enterprise. (Opinion at 12–14.) As a result, this Court treated Defendants as Plaintiffs' single employer for purposes of Plaintiffs' FLSA claims, holding Defendants jointly and severally liable under the single employer doctrine. (*Id.*) This Court considered factors establishing the existence of a single integrated enterprise in the case of restaurants, including "common décor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; …and the distribution of common employee guidelines and procedures across different businesses." *Marin v. APU Foods Corp.*, No. 17 Civ. 3224 (MKB) (SMG), 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, No. 17 Civ. 3224

8

(MKB) (SMG), 2018 WL 1459488 (E.D.N.Y. Mar. 23, 2018) (citation omitted); *Yu Wei Cao v. Miyama, Inc.*, No. 15 Civ. 0266 (JS) (ARL), 2019 WL 4279407, at *7 (E.D.N.Y. Sept. 10, 2019).

In finding a single integrated enterprise, this Court relied on both Defendants' and Plaintiffs' trial testimony and provided examples of Plaintiffs moving back and forth among Defendants' restaurants. (Opinion at 12–13.) This Court also noted that the individual Defendants, including Zhida Li and Jingchao Li, exercised management and ownership authority at multiple restaurants. (*Id.* at 13.) In their motion and briefs, Hunan Manor Defendants do not provide any new arguments, evidence, or case law, and instead point to evidence and arguments that they previously raised and that this Court considered in reaching its conclusion. As a result, Hunan Manor Defendants' request that this Court reconsider the liability of Defendants Hunan Manor Enterprise, Inc., Zhida Li, and Jingchao Li is denied.

**B.    Hunan Manor Defendants' Request to Amend the Damages Calculation Is Partially Granted**

Hunan Manor Defendants suggest several corrections to the damages of Plaintiffs Shi Ming Chen, Lianhe Zhou, Pingjin Fan, Qifang Chen, and Xinlong Liu. (Hunan Manor Defendants' Brief at 6–13.) Plaintiffs agree with two of the suggested corrections. (Pls.' Mem. L. Opp'n, ECF No. 379, at 5.) This Court will amend Plaintiffs' damages according to the two corrections on which Plaintiffs and Defendants agree. First, Hunan Manor Defendants ask this Court to calculate weekly salary equivalents from monthly salaries by multiplying the monthly salary by 12 and then dividing by 52, rather than by dividing the monthly salary by four. Because Hunan Manor Defendants' suggested calculation method is required by Department of Labor regulations for calculating overtime pay, this Court will amend the damages calculation for Plaintiffs who earned monthly salaries. *See* 29 C.F.R. § 778.113(a). Second, Hunan Manor Defendants and Plaintiffs agree that Plaintiff Shi Ming Chen did not work between March 31, 2014, and May 29, 2014. As a result, this Court will amend Plaintiff Shi Ming Chen's damages to account for this break.

As to the other suggested corrections to Plaintiffs' damages, Hunan Manor Defendants do not provide "controlling decisions or data that the court overlooked…," as required to succeed on a motion for reconsideration. *Shrader*, 70 F.3d at 257. Hunan Manor Defendants ask this Court to reconsider Plaintiff Shi Ming Chen's salary between February and July 2011. (Hunan Manor Defendants' Brief at 6.) They also claim that he did not work for "20+ days" during this period. (*Id.*) In support of these requests, Hunan Manor Defendants cite testimony in the trial transcript, which this Court already considered in reaching its calculation of damages in its Opinion. The witness testimony at trial, considered in its entirety, does not support Hunan Manor Defendants' contention that Plaintiff Shi Ming Chen was paid a salary below $3,000 or that he did not work for 20+ days within the relevant period, which began on February 2, 2011. (*See* Opinion at 19.)

Hunan Manor Defendants also suggest changes to the number of weeks Plaintiff Qifang Chen worked and the number of days per week Plaintiff Xinlong Liu worked. (Hunan Manor Defendants' Brief at 11–12.) This Court's calculation of damages for Plaintiff Qifang Chen already took into account her breaks from work between July 27, 2014, and October 30, 2016, as reflected in the number of weeks used by this Court to calculate her damages. (*See* Opinion at 32–33.) As to the number of days per week Plaintiff Xinlong Liu worked, this Court concluded from records and testimony that he worked approximately four days per week for 9.5 hours per day when taking into account his full range of hours and days worked. (*See id.* at 32.) Hunan Manor Defendants do not point to any new evidence or data that this Court did not already use in its initial calculation of Plaintiff Xinlong Liu's damages.

This Court will amend the damages calculation only as discussed above.

### i. Shi Ming Chen

From February 2, 2011, to August 15, 2011, Plaintiff Shi Ming Chen was paid a monthly salary of $3,000, resulting in a weekly rate of $692.31 ($3,000 monthly salary x 12 months ÷ 52 weeks) and an hourly

10

rate of $17.31 ($692.31 ÷ 40 hours). He thus should have been paid $25.97 per hour for the 20 overtime hours he worked each week.[2] He worked 28 weeks at this regular rate of pay, entitling him to **$14,543.20** (20 hours x 28 weeks x $25.97 hourly wage) in overtime pay.

From August 16, 2011, to December 31, 2011, Plaintiff Shi Ming Chen was paid a monthly salary of $3,300, resulting in a weekly rate of $761.54 ($3,300 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $19.04 ($761.54 ÷ 40 hours). He thus should have been paid $28.56 per hour for the 20 overtime hours he worked each week. He worked 20 weeks at this regular rate of pay, entitling him to **$11,424.00** (20 hours x 20 weeks x $28.56 hourly wage) in overtime pay.

From January 1, 2012, to December 31, 2012, Plaintiff Shi Ming Chen was paid a monthly salary of $3,400, resulting in a weekly rate of $784.62 ($3,400 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $19.62 ($784.62 ÷ 40 hours). He thus should have been paid $29.43 per hour for the 20 overtime hours he worked each week. He worked 52 weeks at this regular rate of pay, entitling him to **$30,607.20** (20 hours x 52 weeks x $29.43 hourly wage) in overtime pay.

From January 1, 2013, to March 30, 2014, and from May 29, 2014, to August 9, 2014, Plaintiff Shi Ming Chen was paid a monthly salary of $3,500, resulting in a weekly rate of $807.69 ($3,500 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $20.19 ($807.69 ÷ 40 hours). He thus should have been paid $30.29 per hour for the 20 overtime hours he worked each week. He worked 75 weeks at this regular rate of pay, entitling him to **$45,435.00** (20 hours x 75 weeks x $30.29 hourly wage) in overtime pay.

From August 10, 2014, to March 7, 2015, Plaintiff Shi Ming Chen was paid a monthly salary of $3,600, resulting in a weekly rate of $830.77 ($3,600 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $20.77 ($830.77 ÷ 40 hours). He thus should have been paid $31.16 per hour for the 20 overtime

---

[2] The overtime hourly rate of pay is calculated by multiplying the regular hourly rate of pay by 1.5. (*See* Opinion at 22.)

11

hours he worked each week. He worked 30 weeks at this regular rate of pay, entitling him to **$18,696.00** (20 hours x 30 weeks x $31.16 hourly wage) in overtime pay.

From March 8, 2015, to September 6, 2015, Plaintiff Shi Ming Chen was paid a monthly salary of $3,700, resulting in a weekly rate of $853.85 ($3,700 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $21.35 ($853.85 ÷ 40 hours). He thus should have been paid $32.03 per hour for the 20 overtime hours he worked each week. He worked 26 weeks at this regular rate of pay, entitling him to **$16,655.60** (20 hours x 26 weeks x $32.03 hourly wage) in overtime pay.

From September 7, 2015, to February 21, 2016, Plaintiff Shi Ming Chen was paid a monthly salary of $3,800, resulting in a weekly rate of $876.92 ($3,800 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $21.92 ($876.92 ÷ 40 hours). He thus should have been paid $32.88 per hour for the 20 overtime hours he worked each week. He worked 24 weeks at this regular rate of pay, entitling him to **$15,782.40** (20 hours x 24 weeks x $32.88 hourly wage) in overtime pay.

From March 4, 2016, to May 19, 2016, Plaintiff Shi Ming Chen was paid a monthly salary of $3,900, resulting in a weekly rate of $900 ($3,900 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $22.50 ($900 ÷ 40 hours). He thus should have been paid $33.75 per hour for the 20 overtime hours he worked each week. He worked 11 weeks at this regular rate of pay, entitling him to **$7,425.00** (20 hours x 11 weeks x $33.75 hourly wage) in overtime pay.

From May 20, 2016, to September 8, 2016, Plaintiff Shi Ming Chen was paid a monthly salary of $4,000, resulting in a weekly rate of $923.08 ($4,000 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $23.08 ($923.08 ÷ 40 hours). He thus should have been paid $34.62 per hour for the 20 overtime hours he worked each week. He worked 16 weeks at this regular rate of pay, entitling him to **$11,078.40** (20 hours x 16 weeks x $34.62 hourly wage) in overtime pay.

Plaintiff Shi Ming Chen is thus owed **$171,646.80** in total overtime pay and an equal amount in liquidated damages, plus all applicable interest. (*See* Opinion at 35–38.)

### ii. Lianhe Zhou

From June 15, 2014, to September 20, 2014, Plaintiff Lianhe Zhou was paid a monthly salary of $3,400, resulting in a weekly rate of $784.62 ($3,400 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $19.62 ($784.62 ÷ 40 hours). He thus should have been paid $29.43 per hour for the 20 overtime hours he worked each week. He worked 14 weeks at this regular rate of pay, entitling him to **$8,240.40** (20 hours x 14 weeks x $29.43 hourly wage) in overtime pay.

From March 18, 2016, to June 12, 2016, Plaintiff Lianhe Zhou was paid a monthly salary of $3,500, resulting in a weekly rate of $807.69 ($3,500 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $20.19 ($807.69 ÷ 40 hours). He thus should have been paid $30.29 per hour for the 20 overtime hours he worked each week. He worked 12 weeks at this regular rate of pay, entitling him to **$7,269.60** (20 hours x 12 weeks x $30.29 hourly wage) in overtime pay.

Plaintiff Lianhe Zhou is thus owed **$15,510.00** in total overtime pay and an equal amount in liquidated damages, plus all applicable interest. (*See* Opinion at 35–38.)

### iii. Wei Min Zhu

From March 1, 2015, to November 15, 2015, and from November 30, 2015, to July 31, 2016, Plaintiff Wei Min Zhu was paid a monthly salary of $2,400, resulting in a weekly rate of $553.85 ($2,400 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $13.85 ($553.85 ÷ 40 hours). He thus should have been paid $20.78 per hour for the 20 overtime hours he worked each week. He worked 72 weeks at this regular rate of pay, entitling him to **$29,923.20** (20 hours x 72 weeks x $20.78 hourly wage) in overtime pay. He is also entitled to **$858.80** in overtime pay for a two-week period in November 2015. (Opinion at 31.)

Plaintiff Wei Min Zhu is thus owed **$30,782.00** in total overtime pay and an equal amount in liquidated damages, plus all applicable interest. (*See* Opinion at 35–38.)

### iv. Baojun Tian

From May 16, 2015, to August 30, 2015, Plaintiff Baojun Tian, who worked for Defendants as a deliveryman, was paid a monthly salary of $1,000, resulting in a weekly rate of $230.77 ($1,000 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $5.77 ($230.77 ÷ 40 hours). (*See* Opinion at 7.) He worked approximately 50 hours per week. A lawful paycheck including both minimum wage and overtime would have amounted to $481.25 per week. (*Id.* at 32.) He is owed the difference between his actual pay received and his lawful pay ($250.48 x 15 weeks), totaling **$3,757.20** in minimum wage backpay and overtime.

Plaintiff Baojun Tian is thus owed **$3,757.20** in minimum wage backpay and overtime and an equal amount in liquidated damages, plus all applicable interest. (*See* Opinion at 35–38.)

### v. Pingjin Fan

From March 1, 2015, to May 15, 2015, Plaintiff Pingjin Fan was paid a monthly salary of $2,400, resulting in a weekly rate of $553.85 ($2,400 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $13.85 ($553.85 ÷ 40 hours). He thus should have been paid $20.78 per hour for the 20 overtime hours he worked each week. He worked 11 weeks at this regular rate of pay, entitling him to **$4,571.60** (20 hours x 11 weeks x $20.78 hourly wage) in overtime pay.

From May 16, 2015, to July 31, 2015, Plaintiff Pingjin Fan was paid a monthly salary of $2,500, resulting in a weekly rate of $576.92 ($2,500 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $14.42 ($576.92 ÷ 40 hours). He thus should have been paid $21.63 per hour for the 20 overtime hours he worked each week. He worked 11 weeks at this regular rate of pay, entitling him to **$4,758.60** (20 hours x 11 weeks x $21.63 hourly wage) in overtime pay.

From August 1, 2015, to October 15, 2015, Plaintiff Pingjin Fan was paid a monthly salary of $2,600, resulting in a weekly rate of $600 ($2,600 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $15 ($600 ÷ 40 hours). He thus should have been paid $22.50 per hour for the 20 overtime hours he worked each week. He worked 11 weeks at this regular rate of pay, entitling him to **$4,950.00** (20 hours x 11 weeks x $22.50 hourly wage) in overtime pay.

From October 16, 2015, to December 31, 2015, Plaintiff Pingjin Fan was paid a monthly salary of $2,700, resulting in a weekly rate of $623.08 ($2,700 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $15.58 ($623.08 ÷ 40 hours). He thus should have been paid $23.37 per hour for the 20 overtime hours he worked each week. He worked 11 weeks at this regular rate of pay, entitling him to **$5,141.40** (20 hours x 11 weeks x $23.37 hourly wage) in overtime pay.

From January 1, 2016, to February 28, 2016, Plaintiff Pingjin Fan was paid a monthly salary of $2,800, resulting in a weekly rate of $646.15 ($2,800 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $16.15 ($646.15 ÷ 40 hours). He thus should have been paid $24.23 per hour for the 20 overtime hours he worked each week. He worked 8 weeks at this regular rate of pay, entitling him to **$3,876.80** (20 hours x 8 weeks x $24.23 hourly wage) in overtime pay.

From November 12, 2016, to December 31, 2016, Plaintiff Pingjin Fan was paid a monthly salary of $2,900, resulting in a weekly rate of $669.23 ($2,900 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $16.73 ($669.23 ÷ 40 hours). He thus should have been paid $25.10 per hour for the 20 overtime hours he worked each week. He worked 7 weeks at this regular rate of pay, entitling him to **$3,514.00** (20 hours x 7 weeks x $25.10 hourly wage) in overtime pay.

From January 1, 2017, to February 15, 2017, Plaintiff Pingjin Fan was paid a monthly salary of $3,000, resulting in a weekly rate of $692.31 ($3,000 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $17.31 ($692.31 ÷ 40 hours). He thus should have been paid $25.97 per hour for the 14 overtime hours

he worked each week. He worked 7 weeks at this regular rate of pay, entitling him to **$2,545.06** (14 hours x 7 weeks x $25.97 hourly wage) in overtime pay.

From February 16, 2017, to November 12, 2017, Plaintiff Pingjin Fan was paid a monthly salary of $3,100, resulting in a weekly rate of $715.38 ($3,100 monthly salary x 12 months ÷ 52 weeks) and an hourly rate of $17.88 ($715.38 ÷ 40 hours). He thus should have been paid $26.82 per hour for the 14 overtime hours he worked each week. He worked 39 weeks at this regular rate of pay, entitling him to **$14,643.72** (14 hours x 39 weeks x $26.82 hourly wage) in overtime pay.

Plaintiff Pingjin Fan is thus owed **$44,001.18** in total overtime pay and an equal amount in liquidated damages, plus all applicable interest. (*See* Opinion at 35–38.)

### VI. TASTE OF MAO DEFENDANTS' MOTION FOR RECONSIDERATION IS DENIED

Taste of Mao Defendants move for the first time in their motion for reconsideration to decertify the collective action. (Taste of Mao Defendants' Brief at 2–10.) This motion is untimely given that it was made "for the first time on a motion for reconsideration." *See Barnhart*, 2006 WL 547681, at *1. The motion to decertify is also moot. Each Plaintiff recovering in this action is named in the First Amended Complaint. (*See* FAC.) As a result, this Court declines to consider Taste of Mao Defendants' decertification arguments.

Taste of Mao Defendants also argue that Plaintiffs' counsel "tainted the trial record" through improper "lengthy speaking objections" that influenced Plaintiffs' testimony. (Taste of Mao Defendants' Brief at 17.) Taste of Mao Defendants do not cite any controlling authority in making this argument and cite only cases addressing the impropriety of speaking objections in depositions. (*Id.*) Furthermore, this Court assessed the credibility of the witnesses' testimony based on the entire trial record, including any improper objections made by Plaintiffs' counsel, and found Plaintiffs' testimony to be generally credible "based on their demeanor at trial and their explanations for any previous inconsistent statements." (Opinion at 9.) A trial judge's determination of witness credibility is entitled to "strong deference." *JTH*

*Tax, LLC v. Agnant*, 62 F.4th 658, 671 (2d Cir. 2023). As a result, Taste of Mao Defendants' request that this Court reconsider its assessment of the credibility of Plaintiffs' testimony is denied.

## VII. CONCLUSION

Plaintiffs' Motion is GRANTED. Hunan Manor Defendants' Motion is GRANTED IN PART as to its request to amend the damages calculation and DENIED as to its other requests. Taste of Mao Defendants' Motion is DENIED. Plaintiffs' amended damages, including liquidated damages and excluding all applicable interest, are as follows in the table below. The Clerk of Court is directed to enter an amended judgment, with prejudgment interest to be calculated as set forth in this Court's original Opinion. (*See* Opinion at 36–38.)

| Plaintiff | Overtime | Minimum Wage | Spread of Hours | Wage Notice | Liquidated Damages | Total (*excl. all applicable interest*) |
|---|---|---|---|---|---|---|
| Shi Ming Chen | $171,646.80 | 0 | $13,308.60 | 0 | $184,955.40 | **$369,910.80** |
| Lianhe Zhou | $15,510.00 | 0 | $1,343.22 | 0 | $16,853.22 | **$33,706.44** |
| Wei Min Zhu | $30,782.00 | 0 | $3,938.21 | 0 | $34,720.21 | **$69,440.42** |
| Baojun Tian | $1,968.75 | $1,788.45 | 0 | 0 | $3,757.20 | **$7,514.40** |
| Xinlong Liu | 0 | $5,633.50 | 0 | 0 | $5,633.50 | **$11,267.00** |
| Qifang Chen | $5,579.50 | $3,950.00 | 0 | 0 | $9,529.50 | **$19,059.00** |
| Pingjin Fan | $44,001.18 | 0 | $6,117.35 | 0 | $50,118.53 | **$100,237.06** |
| | | | | | | **$611,135.12** |

Dated: December 4, 2023
New York, New York

SO ORDERED.

*(signature)*
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

17